GENERAL ELECTRIC COMPANY, a
New York corporation, doing business
in Colorado, Petitioner,

v.

Donald L. NIEMET and Connie
Niemet, Respondents.

PARAHO DEVELOPMENT CORPO-
RATION and Development Engi-
neering, Inc., Petitioners,

v.

Dennis Wayne COOLEY, Respondent.

Nos. 92SC552, 92SC767.

Supreme Court of Colorado,
En Banc.

Jan. 10, 1994.

Watson, Nathan & Bremer, P.C., Mark H.
Dumm, Heidi J. Hugdahl, Denver, for peti-
tioner General Electric Co.

Bill E. Landsberg, Kenneth A. Matthews,
Colorado Springs, for respondents Donald
and Connie Niemet.

Colorado Trial Lawyers Ass'n, Amicus Cu-
riae Committee, Douglas E. Bragg, Denver,
for amicus curiae Colorado Trial Lawyers
Ass'n.

White and Steele, P.C., Glendon L. Laird,
Joseph R. King, Denver, for amicus curiae
Colorado Defense Lawyers Ass'n.

Hall & Evans, L.L.C., Alan Epstein, Mann
& Shappell, W. Berkeley Mann, Jr., Denver,
for petitioners Paraho Development Corp.
and Development Engineering, Inc.

Nicholas W. Goluba, Jr., Glenwood Springs, for respondent Dennis Wayne Cooley.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to determine the relationship between section 13–21–102.5, 6A C.R.S. (1987 & 1993 Supp.), which limits noneconomic damages in a civil action, and section 13–21–111.5, 6A C.R.S. (1987 & 1993 Supp.), the pro rata liability statute. Specifically, we now decide, in cases involving multiple defendants or where the plaintiff is partially at fault, whether the cap imposed by section 13–21–102.5 shall be applied to individual defendants after liability has been apportioned or whether it shall be applied first to the plaintiff's total award before pro rata liability is apportioned.

We consolidated two separate actions for review and concurrently address both appeals, since each raises the same issue. In the first case, *General Electric Co. v. Niemet,* No. 92SC552, General Electric appeals from the court of appeals' decision upholding the trial court, which first calculated each party's pro rata share of damages and then applied the statutory cap to each defendant. 843 P.2d 87. In *Paraho Development Corp. v. Cooley,* No. 92SC767, Paraho appeals from the court of appeals' decision correcting the trial court's error and directing the trial court to apportion the percentages of fault before applying the statutory cap. 851 P.2d 207.

We affirm the decisions of the court of appeals and hold that a trial court shall apportion liability according to the degree of fault before it applies the statutory cap on noneconomic damages. We hold that the cap in section 13–21–102.5 applies to the liability share of each defendant in a case, and does not act as a cap on the total amount a plaintiff may recover.

I.

A.

Donald Niemet is employed by the Electric Utilities Division of the City of Colorado Springs. On August 21, 1987, after nine years of employment with the City, Niemet was injured in an explosion and fire caused by a defective and improperly grounded transformer manufactured by General Electric. Niemet suffered severe burns and dislocation of both shoulders. At trial in November 1990, a jury determined that Niemet suffered $1 million in noneconomic damages, $120,000 in economic damages, and $75,000 in damages for physical impairment or disfigurement. The jury apportioned the liability three ways: the City of Colorado Springs was found to be fifty-five percent at fault; General Electric, thirty-five percent at fault; and Niemet, ten percent at fault. The court apportioned thirty-five percent of the damages to General Electric, or $350,000. Because the court found that clear and convincing evidence justified raising the cap on noneconomic damages to $500,000, the cap was not used to reduce the noneconomic award further. The court of appeals affirmed the decision of the trial court.

B.

On September 6, 1980, Dennis Cooley was riding a motorcycle when he collided with a United States Postal Service vehicle driven by a Postal Service employee. Cooley was twelve years old at the time of the collision. In June 1988, Cooley filed this action against the Paraho Development Corporation and its subsidiary, Development Engineering, Inc., based on claims that Paraho had failed to remove certain rocks and natural vegetation in the area of the accident, which hindered or blocked drivers' vision at the intersection.[1]

Trial occurred in early November 1990. The jury apportioned twenty percent of the fault to Paraho; twenty-five percent to the driver of the Postal Service vehicle (who was not a party); twenty percent to the United States (which was not a party); five percent to the plaintiff's mother; five percent to the plaintiff's father; and twenty-five percent to the plaintiff. The jury further determined that Cooley sustained $350,000 in noneconomic losses, $350,000 in economic losses,

---

1. The statute of limitations was tolled while Cooley was a minor.

and no damages for physical impairment. The trial court initially reduced the verdict by eighty percent, representing the negligence of all non-parties and the plaintiff and his family, and entered judgment in the amount of $140,000 ($70,000 for noneconomic damages and $70,000 for economic damages). Pursuant to Paraho's post-trial motions, however, the trial court altered this formula by applying section 13–21–102.5 and reducing the noneconomic damage award to $250,000, and then reduced this sum by eighty percent. The trial court then entered judgment for plaintiff in the amount of $50,000, rather than for $70,000 for noneconomic damages.

On appeal, the court of appeals reversed the trial court's method of calculating noneconomic damages and held that the trial court should have assessed the percentages of fault before it applied the $250,000 statutory cap.

## II.

We granted certiorari in this case to decide the relationship between section 13–21–102.5, 6A C.R.S. (1987 & 1993 Supp.), which limits noneconomic damages to $250,000, and section 13–21–111.5, 6A C.R.S. (1987 & 1993 Supp.), the pro rata liability statute. Subsection (3)(a) of section 13–21–102.5 states:

In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor. In no case shall the amount of such damages exceed five hundred thousand dollars.

§ 13–21–102.5(3)(a), 6A C.R.S. (1987).

The pertinent parts of the pro rata liability statute, section 13–21–111.5, state:

(1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss....

(2) The jury shall return a special verdict, or, in the absence of a jury, the court shall make special findings determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action.

§ 13–21–111.5(1), (2), 6A C.R.S. (1987).

The dilemma raised by *Niemet* and *Cooley* occurs when several defendants are found to be at fault and/or when the plaintiff himself bears some of the fault. In its most basic form, the issue is whether a trial court should apply the statutory cap on noneconomic damages before or after it rules on the pro rata liability of the defendants and the plaintiff.

An example is useful to illustrate these two alternatives and the effect on each of the parties. The *Niemet* jury determined that Niemet suffered $1 million in noneconomic damages and apportioned fifty-five percent of the fault to the City of Colorado Springs, thirty-five percent to General Electric, and ten percent to Niemet. Applying the finding of the jury, the trial court determined that General Electric was liable for $350,000. The trial court also found that clear and convincing evidence existed to raise the cap to $500,000. Because the amount of General Electric's liability was less than $500,000, the court did not apply the statutory cap. In this scenario, General Electric would be liable for $350,000. Alternatively, if the trial court had applied the cap before it apportioned liability, it would have begun by reducing Niemet's $1 million jury verdict to $500,000. It then would have apportioned thirty-five percent of $500,000, or $175,000, to General Electric. In this second situation, where the cap was applied to a plaintiff's jury verdict before pro rata liability is apportioned, General Electric would be liable for only half the amount it would in the first scenario.

General Electric and Paraho argue for applying the statutory cap on the plaintiff's total noneconomic damage award before pro rata liability is apportioned. Niemet and Cooley argue that the cap should act to limit the liability of individual defendants and should be applied to the defendants' pro rata shares. These different interpretations re-

quire an inquiry as to whether the language of the statute is ambiguous.

### III.

When the language of a statute is clear and unambiguous, we apply the statute as written and do not need to employ the interpretive rules of statutory construction. *Sigman v. Seafood Ltd. Partnership,* 817 P.2d 527 (Colo.1991). Where a statute is unclear, however, and the language lends itself to alternative constructions, it is appropriate to look to the pertinent legislative history in determining which construction is in accordance with the objective sought by the legislature. *People v. Terry,* 791 P.2d 374 (Colo.1990); *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555 (Colo.1989). Statutes susceptible to more than one interpretation are ambiguous and must be construed in light of their legislative intent and purpose. *Estate of David v. Snelson,* 776 P.2d 813 (Colo. 1989). If the language of the statute is ambiguous, we may consider its legislative history to ascertain the legislature's intent. *People v. Davis,* 794 P.2d 159 (Colo.1990), *cert. denied,* 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). We construe the statute to further the intent of the legislature as evidenced by the entire statutory scheme. *Meyers v. Price,* 842 P.2d 229 (Colo.1992).

When it enacted section 13–21–102.5, the Colorado General Assembly did not explicitly consider when or how the statute's cap on noneconomic damages would be applied in pro rata liability cases. The language of the statute is ambiguous on the issues of whether the cap should be applied before or after pro rata liability is determined, and whether the cap is meant to limit the plaintiff's total award or the liability of an individual defendant.

### A.

A review of the legislative history and purpose behind sections 13–21–102.5 and 13–21–111.5 convinces us that the statutory cap must be applied to individual defendants and not to plaintiffs. The introductory paragraph to section 13–21–102.5 states:

> The general assembly finds, determines, and declares that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries.

§ 13–21–102.5(1). In reasoning that awards for noneconomic injuries unduly burden the welfare of persons in the state, the General Assembly implied that its purpose in enacting the statute was to protect individual defendants from excessive noneconomic damage verdicts, not to deprive injured plaintiffs from recovering compensation for their damages. That section 13–21–111.5 eliminates joint and several liability of defendants and replaces it with pro rata liability also suggests that the legislature's purpose in enacting tort reform was to reduce unfair burdens placed on defendants.

The General Assembly passed tort reform legislation in 1986 in response to concerns about dramatic increases in the cost of insurance and the difficulties people and businesses experienced obtaining insurance. It is clear from the legislative history of section 13–21–102.5 and other 1986 tort reform efforts that the primary goal of the legislature was to increase the affordability and availability of insurance by making the risk of insured entities more predictable. As Senator Hefley, who sponsored the bill that included both sections 13–21–102.5 and 13–21–102, 6A C.R.S. (1987), said in introducing the bill on the Senate floor:

> [Throughout the] discussions in the Business Affairs and Labor Committee, and I think throughout our considerations as we consider these bills here on the floor of the Senate, we need to keep in mind that the availability and the affordability of insurance is the key. As we make our deliberations, let's remember that what we're trying to do is to work to help the situation in

such a way that there will be availability and affordability of insurance.

*Senate Floor Debate on S.B. 67 Before the Full Senate,* 55th Gen.Assembly, 2d Reg. Sess., 2d Reading (Audio Tape 86–14, Feb. 25, 1986). Representative Schauer, the principal sponsor of the bill in the House, echoed these comments:

> I believe [that] the work we've already accomplished will increase the availability and affordability of insurance. We haven't finished the job. There are several financial aspects of the civil justice system which need to be addressed. Without addressing these elements, we ... will not have done all we can to restore balance and predictability to the market place. The businesses or community organizations and insurance companies do not know the limits of their liability; they do not know how to plan for the future or how to write policies covering unpredictable risks. From the insurance company perspective, if we address the issue[s] of [the bill], companies will know their risk with greater clarity. They will need to reserve less and will be able, therefore, to write more policies.

*Hearings on S.B. 67 Before the House Finance Committee,* 55th Gen.Assembly, 2d Reg.Sess. (Audio Tape 86–16, Mar. 6, 1986). The goal of the General Assembly in enacting the legislation was to improve the predictability of risks faced by insurance companies. If an insurance company can predict risks with reasonable accuracy, then it can also predict its losses and profits. The concern of an insurance company is the risk associated with insuring each individual insured, not with denying an injured person damages that may be paid by another insurance company or person. Even if an insurance company insures two defendants in one lawsuit, its risk is still predictable. The statutory cap of $250,000, or in some cases up to $500,000, provides a predictable limit for insurance companies, beyond which they cannot be liable for an individual defendant.

The legislative history of section 13–21–102.5 demonstrates that the General Assembly was also concerned about unduly restricting the recoveries of deserving, injured people. The original bill introduced in the House placed an absolute limit of $250,000 on noneconomic damages, with no possibility for adjustment. In discussing amendments to this limitation, several legislators expressed concern about the effect of such a stringent cap. Senator Meiklejohn stated, in part:

> [I]f the bill became law without the amendment, the statute just flatly would cut it off at $250,000, no matter how seriously or desperately a person was injured. Now that was what was in the Committee's mind when we added the amendment [to allow damages of up to $500,000 when a court finds clear and convincing evidence]. And I think [that], unless there is some relief valve like that, we can't cover everything that goes on in court in this chamber and, unless there is some relief valve like that, I think that there are going to be occasions of terrible miscarriages of justice if there is just a cold-hearted limit to the amount of damages on noneconomic losses.

*Senate Floor Debate on S.B. 67 Before the Full Senate,* 55th Gen.Assembly, 2d Reg. Sess., 2d Reading (Audio Tape 86–14, Feb. 25, 1986). In the same debate, Senator Hefley further added:

> We do want to do two or three things with this. We want to bring some predictability back into the system and that's part of the problem, I think, that the various witnesses testified to, that insurance operates on the basis of being able to predict—being able to predict how much money is going to be paid out. And so we need some kind of predictability back into it, but, at the same time, ... we do not want to penalize legitimate victims who have had extensive pain and suffering beyond which the $250,000 would cover.

The final amended legislation balanced the concern over insurance affordability and predictability with concern for fairness to seriously injured people. The intent was to cap the amount of noneconomic damages paid by individual defendants, in order to increase predictability for insurance companies, while

at the same time not restricting the recovery of noneconomic damages by seriously injured persons more than was necessary to accomplish the goal of insurance predictability.

**B.**

General Electric argues that the language "the total of such damages shall not exceed the sum of two hundred fifty thousand dollars" in section 13–21–102.5(3)(a) requires us to find that the limit on noneconomic damages applies to a plaintiff's total recovery, not an individual defendant's liability. General Electric, however, can point to no authority for its contention. Its citation to *Webster's II New Riverside University Dictionary* (1984), which defines the word "total" as " '[t]he quantity or amount reached by addition ... [a] whole quantity,' " sheds no light on whether the word "total" in the statute applies to the plaintiff or defendant.

An analysis of the first part of section 13–21–102.5(3)(a)[2] in the context of our decision in *Lira v. Davis,* 832 P.2d 240 (Colo.1992), is more instructive. In *Lira,* we defined the word "award" as it is used in section 13–21–102(1)(a), 6A C.R.S. (1987), the statute on exemplary damages. The *Lira* jury awarded the plaintiff $87,300 in actual damages for injuries sustained, and $87,300 in exemplary damages against one defendant, Lira. The jury found Lira to be fifty percent at fault, and two other defendants and the plaintiff to be collectively liable for the other fifty percent of the fault. Section 13–21–102(1)(a) provides that "[t]he amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages *awarded* to the injured party." (Emphasis added.)

The question we addressed in *Lira* was whether "actual damages awarded" referred to the jury's gross verdict of $87,300 or Lira's pro rata share of fifty percent of that amount. We held that "actual damages awarded" meant Lira's reduced pro rata

amount, or fifty percent. We concluded that "the reference to damages awarded equates to the reduced compensatory amount." *Id.* at 245. Thus, as we interpreted the statute, a trial court must ascertain a plaintiff's and defendants' pro rata liability before it determines the amount of exemplary damages.

The exemplary damages statute construed in *Lira,* section 13–21–102(1)(a), was enacted at the same time as the two statutes at issue in this case, all part of the 1986 tort reform legislation. When we interpret related statutes, it is important that we harmonize their meanings and interpret their words consistently. *City of Aspen v. Howell,* 170 Colo. 82, 459 P.2d 764 (1969); *Colorado Gen. Assembly v. Lamm,* 700 P.2d 508 (Colo.1985). The first sentence of section 13–21–102.-5(3)(a) states, in part: "In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars...." When we apply the meaning of "award" that we defined in *Lira* to section 13–21–102.5, we find that the statutory language refers to the damages of a plaintiff *after* pro rata liability has been applied. Thus, *Lira* compels the conclusion that the cap on noneconomic damages in section 13–21–102.5 refers to a cap on the individual defendants, not on the plaintiff.

**IV.**

California is the only other state in which this issue has been addressed, and its resolution there is unsettled and has not been resolved by the California Supreme Court. General Electric and Paraho urge us to adopt the reasoning of the Sixth District of the California Courts of Appeal in *Gilman v. Beverly California Corp.,* 231 Cal.App.3d 121, 283 Cal.Rptr. 17 (6th Dist.1991). In *Gilman,* the court construed the relationship between the Medical Injury Compensation Reform Act (MICRA), which caps noneconomic damages in medical malpractice ac-

---

**2.** This section states in part: "In any civil action in which damages for noneconomic loss or injury

may be awarded, the total of such damages shall

tions,[3] and the state's pro rata liability act.[4] In that case, the children of a nursing home patient brought a wrongful death action based on medical malpractice against the operator of the nursing home. The decedent's physician, who was insolvent, was not joined in the action, but his fault was assessed as a non-party. The court of appeal ruled that a trial court must apply the MICRA cap of $250,000 on the total noneconomic damage award of the plaintiff before it determines the pro rata liability of each defendant.

Two other districts of the California Courts of Appeal have interpreted the MICRA statutory cap differently from the *Gilman* court. In *McAdory v. Rogers*, 215 Cal. App.3d 1273, 264 Cal.Rptr. 71 (2d Dist.1989), the plaintiff sued a physician for malpractice. The jury found that she had suffered noneconomic damages of $370,000 and was twenty-two percent comparatively negligent.[5] The trial court first reduced the noneconomic damages to the MICRA statutory limit of $250,000 and then apportioned each party's fault. The court of appeal reversed.

In *Atkins v. Strayhorn*, 223 Cal.App.3d 1380, 273 Cal.Rptr. 231 (4th Dist.1990), a plaintiff and his spouse sued a physician for malpractice when the physician failed to diagnose a bacterial infection that resulted in the amputation of plaintiff's leg. The trial court applied the jury's comparative fault finding before, rather than after, reducing the amount of noneconomic damages under the cap of California Civil Code section 3333.2. The court of appeal affirmed and

agreed with the earlier decision in *McAdory*, reasoning that the language of section 3333.2 limited "the *recovery* rather than the value of noneconomic damages as a means of protecting the insurability of health care providers." *Atkins*, 223 Cal.App.3d at 1393, 273 Cal.Rptr. 231.

We find the *McAdory* and *Atkins* opinions more persuasive than *Gilman*, but note that the laws of California and Colorado are too dissimilar on this subject to permit our adoption of the reasoning of any of the California cases. For example, the California statute that imposes a cap on noneconomic damages[6] is a narrowly drawn law that limits such damages only in actions against a specific class of health care providers. In contrast, Colorado's statutory cap applies to all tortfeasors. Further, the Colorado legislature provided that a plaintiff, after presenting clear and convincing evidence, can receive an award that exceeds the $250,000 cap. The California legislature made no such provision. Finally, the statutory language employed by the legislatures of California and Colorado is too dissimilar to apply the interpretation of one state's statute to a similar, but not identical, statute of another state.

## V.

Based on our review of the legislative history and purposes behind section 13–21–102.5, and our previous holding in *Lira*, we conclude that a trial court should apportion pro rata liability among the defendants and plaintiff before it applies the statutory cap of

not exceed the sum of two hundred fifty thousand dollars...."

**3.** California Civil Code § 3333.2. Negligence of health care provider; non-economic losses; limitation:

(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

(b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000).

**4.** California Civil Code § 1431.2. Several liability for non-economic damages:

(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.

**5.** In this case and the next, the trial courts applied the principles of comparative fault adopted by the California Supreme Court in *Li v. Yellow Cab Co. of California*, 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975).

**6.** Cal.Civil Code § 3333.2; *see supra* note 3.

section 13–21–102.5. Accordingly, we hold that the cap in section 13–21–102.5 applies to the liability share of each defendant in a case, and does not act as a cap on the total amount a plaintiff may recover from several defendants.

We affirm the holdings of the court of appeals in both cases.

ROVIRA, C.J., dissents, and LOHR, J., joins in the dissent.

Chief Justice ROVIRA dissenting:

The majority holds that the statutory cap for noneconomic damages applies to individual defendants, and therefore, it does not act as a cap on the total amount of noneconomic damages awarded to a plaintiff. In so holding, the majority concludes that in cases involving multiple defendants a trial court must first apportion liability to the appropriate parties, pursuant to the pro rata liability statute, and then apply the statutory cap for noneconomic damages to each individual defendant. Maj. op. at 1362. I disagree with this interpretation. Section 13–21–102.5, 6A C.R.S. (1987 & 1993 Supp.), which creates the statutory cap for noneconomic damages, is clear and unambiguous. The statute is intended to limit a plaintiff's total recovery for noneconomic damages regardless of the number of defendants involved. Thus, in my view, a trial court should apply the statutory cap for noneconomic damages prior to apportioning liability among the defendants. Further, this application of the statutory cap is not inconsistent with the purposes inherent in the pro rata liability statute.

I

A

Section 13–21–102.5 provides in pertinent part:

In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor. In no case shall the amount of such damages exceed five hundred thousand dollars.

§ 13–21–102.5(3)(a). The majority finds this statute ambiguous because no reference is made to a situation in which multiple defendants share some degree of fault for the plaintiff's injuries. As a result, the majority finds it necessary to examine the legislative history in an attempt to ascertain the legislative intent regarding such a situation. The problem with the majority's analysis is that it focuses on what is missing from the statute as opposed to what it says. Because I fail to see any ambiguity in the statute, I find it unnecessary to determine legislative intent from the legislative history.[1] Further, I believe the majority's decision to judicially increase the amount of noneconomic damages a plaintiff may collect violates the clear legislative intent to limit such damages.

In construing a statute, our primary goal is to give effect to the intent of the legislature. To determine legislative intent, we look primarily to the plain language of the statute. When the terms of a statute are unambiguous, judicial inquiry is complete and there is no need to resort to interpretive rules of statutory construction except in rare and exceptional circumstances. See Jones v. Cox, 828 P.2d 218, 221 (Colo.1992); see also Demarest v. Manspeaker, 498 U.S. 184, 190, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991).

An examination of the statute clearly establishes the legislative intent. To begin with, the legislature entitled the statute "limitations on damages for noneconomic loss or injury." Thus, from the outset, the legisla-

---

1. The majority concludes the goal of the legislature in enacting the legislation was "to increase the affordability and availability of insurance by making the risk of insured entities more predictable." Maj. op. at 1364. This goal is fulfilled by limiting a plaintiff's total amount of noneconomic recovery without reference to the number of defendants. This is true because an insurance company would know it would never be liable for noneconomic damages over $500,000, even if it insured two or three defendants who bore some responsibility for a plaintiff's injuries. Thus, an insurance company would be able to accurately predict its risks for noneconomic damages, and therefore, it presumably would lower its rates making insurance available to more people.

tive focus was on limiting *a plaintiff's* recovery for noneconomic damages without reference to the number of potential defendants. Obviously, a statutory title is not dispositive of legislative intent, *Martinez v. Continental Enterprises.*, 730 P.2d 308, 313 (Colo.1986), but it does provide insight into the problem the statute is meant to redress.

More importantly, one need only peruse the operative statutory terms to discern the legislative intent. For example, the statute provides that the "total" amount of noneconomic damages "shall" be limited "in any civil action," and that "in no case shall" the damages exceed $500,000.[2] Though the majority is confused as to whether the word "total" applies to a plaintiff or a defendant, maj. op at 1366, I fail to see any ambiguity in the statutory language. A civil action refers to an action brought by a plaintiff, thus it is obvious that the limitation of damages in a civil action refers to damages recovered by a plaintiff—not to an individual defendant's liability.

Moreover, the legislature did create one exception to the statutory cap. In cases where a court finds "justification by clear and convincing evidence," the statutory cap may be increased from $250,000 to $500,000. § 13–21–102.5(3)(a). Therefore, it is reasonable to assume that if the legislature had intended to allow a plaintiff to receive multiple awards from multiple defendants it would have created such an exception. *See Palmer v. District Court*, 156 Colo. 284, 287, 398 P.2d 435, 437 (1965) ("The mention of . . . one exception excludes other exceptions. Courts would violate their mandate if they were to add another. . . .").

Our decision in *Lira v. Davis*, 832 P.2d 240 (Colo.1992), though not dispositive, lends further support to the view that the legislature intended to cap the total amount of noneconomic damages prior to apportioning fault among multiple defendants. In *Lira*, we considered the interrelationship of the comparative negligence, the pro rata liability, and the exemplary damages statutes. Specifically, our goal was to determine whether the phrase "actual damages awarded" in the exemplary damages statute referred to the amount of compensatory damages awarded prior to the application of the comparative negligence and pro rata liability statutes or to the post-application amount of compensatory damages. *Id.* at 244. We concluded that "award" refers to " 'a remedy recoverable in accordance with an order for judgment,' not the amount of compensatory damages initially determined by the jury." *Id.* at 245 (quoting *Tucker v. Marcus*, 142 Wis.2d 425, 418 N.W.2d 818, 823 (1988)). In other words, "award" does not refer to the jury's raw assignment of liability, but to the reduced judgment. The statement of intent in the statutory cap statue provides, "[t]he general assembly finds, determines, and declares that *awards* in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore . . . the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries." § 13–21–102.5(1), 6A C.R.S. (1987) (emphasis added). To consistently apply the definition of "award" that we developed in *Lira*, the statutory cap in section 13–21–102.5 should be applied to reduce the raw verdict of the jury and then liability should be apportioned according to the pro rata liability statute.

In my opinion, the statutory cap statute is clear and unambiguous and evinces an intent to limit the total noneconomic recovery of a plaintiff in a civil action regardless of the number of defendants. I believe we are bound to apply the statute as written, and therefore, I would first apply the statutory cap and then apportion liability among the defendants thereby limiting the plaintiff's total noneconomic recovery to the statutory cap.

## B

Applying the statutory cap prior to apportioning damages does not impede the purposes of the pro rata liability statute. Sec-

---

**2.** The statutory cap is generally limited to $250,000, but it may expand to $500,000, in cases where there is clear and convincing evidence to justify such an increase. *See* § 13–21–102.5(3)(a).

tion 13–21–111.5, 6A C.R.S. (1987 & 1993 Supp.), provides:

> (1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss....

> (2) The jury shall return a special verdict, or, in the absence of a jury, the court shall make special findings determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action....

§ 13–21–111.5(1), (2). This statute abolished the concept of joint and several liability and espouses the philosophy that no tortfeasor should be responsible for damages that the tortfeasor did not cause. Applying the statutory cap prior to apportioning damages does not affect a jury's determination of the percentage of fault attributable to the various parties. The jury makes this determination and returns the special verdict to the judge. Then, prior to judgment, the judge would apply the statutory cap on noneconomic damages. See § 13–21–102.5(4), 6A C.R.S. (1987) (stating the jury is not to be told about the statutory cap and that the court shall impose the cap before judgment). While each defendant ultimately may pay less in noneconomic damages due to the statutory cap, they are still liable for the percentage of fault attributable to them by the jury. This application fulfills the purposes of the pro rata liability statute to apportion fault among the responsible parties. Conversely, to apply the statutory cap to individual defendants violates the clear legislative intent of section 13–21–102.5 to unequivocally limit the total amount of noneconomic damages a plaintiff may recover. Accordingly, applying the statutory cap prior to apportioning damages among multiple defendants gives effect to the clear terms of section 13–21–102.5 and section 13–21–111.5 and satisfies the goals of both statutes.

3. If the statutory criterion is met.

## II

I write further to point out some of the inequity that the majority's construction will create. Under the majority's interpretation, two different plaintiffs with similar injuries will be treated disparately based upon the number of defendants who bear some portion of responsibility for the plaintiff's injuries. For instance, if a plaintiff is injured by one defendant and has damages in the amount of $1 million, she could collect an absolute maximum of $500,000 [3] in noneconomic damages from the defendant. If another plaintiff with damages in the same amount is injured by two or more defendants and the statutory cap is applied to each individual defendant who bears some portion of fault, the plaintiff potentially could collect a maximum of $500,000 from *each* of the defendants. Thus, under the majority's construction, by the sheer fortuity of being injured by multiple defendants, one plaintiff can collect more damages than a second plaintiff with identical injuries who had the misfortune of being injured by only one person. The legislature could not have intended or desired this type of discrepancy between the amounts of compensation received by two plaintiffs with identical injuries.

## III

In sum, because the statutory cap statute is intended to limit the total amount of noneconomic damages a plaintiff may recover without reference to the number of defendants at fault, I would hold that a trial court must apply the statutory cap of section 13–21–102.5 prior to determining the pro rata liability of the defendants pursuant to section 13–21–111.5.

Accordingly, I respectfully dissent.

I am authorized to say that Justice LOHR joins in this dissent.