Kirpalani, Maynard M., J.
Plaintiff Alysia Ogburn-Sisneros (“plaintiff’), as personal representative of the estate of Billy Ogburn, Sr. (“decedent”), moves this court to order that Massachusetts law applies to her products liability claims against defendants Fresenius Medical Care Holdings, Inc., Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius USA Marketing, Inc., Fresenius USA Sales, Inc. (collectively, “Fresenius”). Fresenius opposes her motion, arguing that Colorado law applies. For the following reasons, the plaintiffs motion is DENIED and the law of Colorado will apply to this case.
DISCUSSION
The facts relevant to this motion are essentially undisputed. The decedent resided, received dialysis treatment, and died in Colorado. As part of his dialysis treatment, the decedent received GranuFlo. Fresenius is a Massachusetts corporation that distributes its products throughout the United States. At all times relevant to this action, Fresenius manufactured GranuFlo in Ohio and Texas, distributed it throughout the United States,[4] and made all decisions regarding the warnings associated with GranuFlo in Massachusetts. The plaintiff alleges that the decedent died as a result of his exposure to GranuFlo, and that Fresenius failed to warn consumers and health care providers about the risks and dangers associated with the product despite knowing of those risks and dangers.
“In light of these various factual contacts with different States,” the court must apply “established choice of law principles in resolving . . . [which state] bears an ‘appropriate relation’ to the plaintiffs claim.” Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 332 (1983). The “conflict-of-law rules of Massachusetts, the forum state, [apply] in order to determine which State’s law is applicable.” Clarendon Nat’l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. 492, 495 (2004). “Massachusetts generally follows a functional approach to resolving choice of law questions on substantive matters, eschewing reliance on any particular choice-of-law doctrine.” Resolute Mgmt, Inc. v. Transatlantic Reinsurance Co., 87 Mass.App.Ct. 296, 302 (2015), quoting Lou v. Otis Elevator Co., 77 Mass.App.Ct. 571, 583 (2010); see Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985) (holding that this approach responds to the interests of the parties, the States involved, and the interstate system as a whole). The court generally looks to the Restatement (Second) of Conflict of Laws as an “obvious source of guidance . ..” Bushkin Assocs., Inc., 393 Mass. at 632.[5]
“[T]he usual first step in applying conflict of law principles is to ascertain whether there is a conflict among the laws of the various States involved.” Cohen, 389 Mass, at 332 n.7; see Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004) (“It is a fundamental choice of law principle that only actual conflicts between the laws of different jurisdictions must be resolved”). The parties do not dispute that there is a conflict between Colorado products liability law and Massachusetts products liability law.
Next, as the plaintiffs claims sound in tort, “it is appropriate to view the choice of law issue raised by the plaintiffs claim in light of choice of law principles applicable in tort actions.” Cohen, 389 Mass, at 332; see Restatement (Second) of Conflict of Laws §145 (setting forth general principles of conflict of laws in tort actions). More specifically, both the plaintiff and Fresenius contend, this action is one for personal injury, thus “the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 [of Restatement (Second) of Conflict of Laws] to the occurrence and the parties, in which event the local law of the other state will be applied.” Restatement (Second) of Conflict of Laws §146;[6] see Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 646-47 (1994) (noting that §145 “provides the general principle ‘applicable to all torts and to all issues in tort,’ ” and that §146 “provides a principle applicable in issues concerning causes of action involving personal injury”).
Although the parties agree that there is a presumption[7] in favor of applying Colorado law as the location of the decedent’s injuiy, the parties do not agree on whether Massachusetts or Colorado has “a more significant relationship” with the occurrence and parties in this case.[8] See Restatement (Second) of Conflict of Laws §146, cmt. c (“The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injuiy bears little relation to the occurrence and the parties”); Restatement (Second) of Conflict of Laws §146, cmt. e (noting that, “[o]n occasion, conduct and personal injuiy -will occur in different states”).
“[T]he identity of the state of most significant relationship . . . depend[s] upon the nature of the tort and upon the particular issue.” Restatement (Second) of Conflict of Laws, Introductory Note to Chapter 7, Topic 1. “The principles stated in [Restatement (Second) of Conflict of Laws] §6 underlie all rules of choice of law and are used in evaluating the significance of a relationship, with respect to the particular issue, to the potentially interested states, the occurrence and the parties.” Restatement (Second) of Conflict of Laws §145, cmt. b; see Restatement (Second) of Conflict of *61 Laws §146, cmt. c (“In large part, the answer to this question will depend on whether some other state has a greater interest in the determination of the particular issue than the state where the injuiy occurred”).
The factors relevant to the choice of the applicable rule include:
(a) the needs of the interstate and international systems;
(b) the relevant policies of the forum;
(c) the relevant polices of other interested states and the relative interests of those states in the determination of the particular issue;
(d) the protection of justified expectations;
(e) the basic policies underlying the particular field of law; •
(1) certainty, predictability and uniformity of result; and
(g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws §6(2); see Restatement (Second) of Conflict of Laws §6, cmt. c (stating that these factors are not exhaustive or listed in order of their relative importance and that “[vjarying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law”). When “applying the principles of §6 to determine the law applicable to an issue!,]” the court should take into account the following contacts:
(a) the place where the injuiy occurred;
(b) the place where the conduct causing the injury occurred;
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
(d) the place where the relationship, if any, between the parties, is centered.
Restatement (Second) of Conflict of Laws §145(2).
I. Contacts in §145
The court “begin[s] by examining the contacts which [Colorado] and Massachusetts have with the parties and the occurrence in this case.” Cosme, 417 Mass, at 647, citing Restatement (Second) of Conflict of Laws §145(2). The contacts set forth in Restatement (Second) of Conflict of Laws §145 weigh in favor of applying Colorado law because, other than § 145(c) with which Massachusetts and Colorado have contacts, Colorado has more contacts with the occurrence and the parties than Massachusetts. See Restatement (Second) of Conflict of Laws § 145(e) (“Those states which are more likely to be interested are those which have one or more of the... [above-listed] contacts with the occurrence and the parties”). First, the injuiy occurred in Colorado, Restatement (Second) of Conflict of Laws § 145(a); and second, Colorado was the place where “the relationship” between the parties was centered given that the only connection between Fresenius and the decedent was GranuFlo, which was administered during the decedent’s dialysis treatment in Colorado. See LaPlante v. American Honda Motor Co., Inc., 27 F.3d 731, 742 (1st Cir. 1994) (noting that this factor is “not helpful in products liability cases where there was no preexisting relationship between the parties” (citation omitted)).
The final contact requires a bit more discussion. The place where the conduct causing the injuiy occurred “is given particular weight” “[w]hen the injury occurred in two or more states, or when the place of injuiy cannot be ascertained or is fortuitous and . . . bears little relation to the occurrence and the parties . . .” Restatement (Second) of Conflict of Laws §145, cmt. e. Those conditions are not present here as the decedent’s injuiy undisputedly occurred in Colorado, a location that was not fortuitous because he lived and received treatment there. See Restatement (Second) of Conflict of Laws § 146, cmt. e (“The local law of the state where the personal injuiy occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled there or because he does business there”).
The plaintiff argues that Fresenius’ conduct occurred in Massachusetts where it made its decisions regarding the warnings associated with GranuFlo. Fresenius, relying in part on Yocham v. Novartis Pharm. Corp., 736 F.Sup.2d 875 (D.N.J. 2010), does not dispute that some of its conduct occurred in Massachusetts, but it points out that its conduct in Massachusetts is not more significant than its conduct that occurred in Colorado, i.e., the marketing and selling of GranuFlo to a dialysis clinic in Colorado. This court also agrees with the court’s reasoning on this point in Yocham.
There, the plaintiff was domiciled, used the defendant’s product, and was injured in Texas; the defendant was a Delaware corporation with its principal place of business in New Jersey. Yocham, 736 F.Sup.2d at 878, 882. Similar to this case, the plaintiff “or her doctor received or failed to receive any representations, warranties, or warnings in Texas, and [the plaintiff] ingested the drug that allegedly caused her injuiy in Texas.” Id. at 882. Also similar to this case, while “some of the relevant conduct, research of the drug’s safely, did occur in New Jersey!,] • • • the more relevant conduct at issue is what [the defendant] revealed to [the plaintiff] and her doctor about the drug, conduct which occurred, if at all, in Texas.” Id. Therefore, the court held that “the conduct causing injuiy in a prescription drug products liability case, including failure to warn and warranty cases, occurs primarily where the injured party was prescribed and ingested the drug.” Id. at 882.
This reasoning is persuasive, and the court concludes that Colorado is the place where the conduct allegedly causing the decedent’s injury occurred.[9] See *62 id.; accord Wahl v. General Electric Co., 786 F.3d 491, 500 (6th Cir. 2015) (holding that Tennessee law applied where, in part, “the conduct causing the injury (the MRI and administration of [defendant’s drug]) occurred in Tennessee” even though “other conduct causing the injury (such as manufacturing and business) occurred throughout the United States”; defendant’s “medical division operated in and was headquartered in New Jersey”!;] and drug at issue “was manufactured in Ireland”); In re Vioxx Prods. Liability Litig., 239 F.R.D. 450, 458 (E.D.La. 2006) (holding that although defendant’s conduct “may have originated in” state where it was incorporated and where “majority, if not all, of the relevant corporate decisions occurred!,]” defendant’s conduct “was effectuated and felt by every plaintiff in [his or her] own home jurisdiction” because drug at issue “was advertised in, marketed in, shipped into, prescribed in, sold in, ingested in, and allegedly caused harm in fifty-one jurisdictions”).
II. Factors in §6
The court next “examine[s] the various relevant considerations provided in §6 as they relate to the issue at hand to determine whether Massachusetts has a more significant relationship” than Colorado. Cosme, 417 Mass, at 647. Application of these factors also weighs in favor of applying Colorado law.
A. Needs of the Interstate System
“Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them .. . [and] a state should have regard for the needs and policies of other states and of the community of states.” Restatement (Second) of Conflict of Laws §6, cmt. d. “Deference to sister state law in situations in which the sister state’s substantial contacts with a problem give it a real interest in having its law applied . . . will at times usefully further” harmonious relations between the states. Cosme, 417 Mass, at 649 (ellipses in original) (citation omitted); see Romani v. Cramer, Inc., 992 F.Sup. 74, 78 (D.Mass. 1998) (holding that “commercial intercourse” is not “furthered by denying [state with substantial contacts] the effect of a law which encourages the sale and exchange of products within its borders”). As this court concluded, above, that Colorado has “substantial contacts” with the occurrence and parties in this case, applying Colorado law here is consistent with promoting harmonious relations between Colorado and Massachusetts.
B. The Relevant Policies of the Forum, the Relevant Polices of the Other Interested State and the Relative Interests of That State in the Determination of the Particular Issue, and the Basic Policies Underlying the Particular Field of Law
“In determining a question of choice of law, the forum should give consideration not only to its own relevant polices . . . but also to the relevant polices of all other interested states. The forum should seek a result that will achieve the best possible accommodation of these policies.” Restatement (Second) of Conflict of Laws §6, cmt. f. Consideration of the policies underlying the particular field of law, i.e., products liability, “is of particular importance in situations where the polices of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules.” Restatement (Second) of Conflict of Laws §6, cmt. h.
1. Relevant Policies of Massachusetts
In Massachusetts, “providing a cause of action for compensation of individuals is the policy behind products liability actions ...” Cosme, 417 Mass, at 647-48; Lou, 77 Mass.App.Ct. at 586 n.29. “There exists a corresponding policy of holding accountable those whose defective products cause injuries ...” Cosme, 417 Mass, at 648.
2. Relevant Policies of Colorado
Colorado law also has deterrence and compensation as its underlying policies, although they manifest in different ways. First, unlike Massachusetts, Colorado codified strict products liability in Colo. Rev. Stat. §13-21-401 et seq., Johnston v. Amsted Indus., Inc., 830 P.2d 1141, 1143 (Colo.App. 1992), which defines a products liability action as
any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injuiy, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product.
Colo. Rev. Stat. §13-21-401(2).[10] A plaintiff can only bring a products liability action against a manufacturer of a product or a seller as long as that seller “is also the manufacturer of said product!,]” Colo. Rev. Stat. §13-21-402(1); “[i]f jurisdiction cannot be obtained over a particular manufacturer of a product... then that manufacturer’s principal distributor or seller over whom jurisdiction can be obtained shall be deemed . . . the manufacturer of the product.” Colo. Rev. Stat. §13-21-402(2).
These provisions indicate that Colorado has an interest in deterring manufacturers—or their distributors, if the manufacturers themselves are not amenable to jurisdiction—from bringing defective products into Colorado’s stream of commerce. See Boles v. Sun Ergoline, Inc., 223 P.3d 724, 727 (Colo. 2010) (holding that products liability in Colorado does not “rest[ ] on negligence principles, [but rather] it ‘is premised on the concept of enterprise liability for *63 casting a defective product into the stream of commerce’ ” (quoting Smith v. Home Light & Power Co., 734 P.2d 1051, 1054 (Colo. 1987))).[11]
Also like Massachusetts, Colorado is concerned with compensating individuals for their injuries, but, again, unlike Massachusetts, Colorado places a cap on damage awards.[12] Specifically, Colorado caps awards in civil actions for noneconomic losses or injuries at $250,000 “unless the court finds justification by clear and convincing evidence therefore!,]” in which case the award cannot exceed $500,000. Colo. Rev. Stat. §13-21-102.5(3)(a). Colorado’s General Assembly enacted this statute limiting damages “for the protection of the public peace, health, and welfare,” because the General Assembly had found “that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in [Colorado] . . .” Colo. Rev. Stat. §13-21-102.5(1). Examining the legislative history of this statute, the Supreme Court of Colorado explained that this statute was a “response to concerns about dramatic increases in the cost of insurance and the difficulties people and businesses experienced obtaining insurance.” General Electric Co. v. Niemet, 866 P.2d 1361, 1364 (Colo. 1994). The General Assembly intended “to cap the amount of noneconomic damages paid by individual defendants, in order to increase predictability for insurance companies, while at the same time not restricting the recovery of noneconomic damages by seriously injured persons more than was necessary to accomplish the goal of insurance predictability.” Id. at 1365-66. The resulting legislation, then, “balanced the concern over insurance affordability and predictability with concern for fairness to seriously injured people.” Id. at 1365.
3. Conclusion
“If the primary purpose of the tort rule involved is to deter or punish misconduct, ... the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship.” Restatement (Second) of Conflict of Laws §145, cmt. c; Restatement (Second) of Conflict of Laws §146, cmt. e. “On the other hand, when the tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often the state where the plaintiff resides, may have the greater interests in the matter.” Id. “To some extent, . . . [however], every tort rule is designed both to deter other wrongdoers and to compensate the injured person . . . and in the case of a given rule it will frequently be difficult to tell which of these objectives is the more important.” Id.
This court concludes that neither Massachusetts nor Colorado values deterrence over compensation, or vice versa, but that only Colorado has taken steps to limit the negative consequences of both through legislation, resulting in a balanced system that punishes wrongdoers in such a way that the effect of that punishment is not borne by Colorado residents. See General Elec. Co., 866 P.2d at 1364. Massachusetts’ “generalized interest” in punishing Massachusetts corporations outside of Massachusetts “is insufficient to override [Colorado’s] superior interests on all other fronts.” See Romani, 992 F.Sup. at 79; see, e.g., Value Partners S.A. v. Bain & Co., Inc., 245 F.Sup.2d 269, 277 (D.Mass. 2003) (“[E]ven though Massachusetts may have an interest in regulating the behavior of Massachusetts corporations outside of Massachusetts, Brazil has a more direct interest in regulating the behavior of foreign companies within Brazil, particularly when Brazilian businesses and Brazilian workers are involved”). Therefore, with its reciprocal polices of preventing manufacturers from placing defective products into Colorado’s stream of commerce, Boles, 223 P.3d at 727, and of protecting “the economic, commercial, and personal welfare of its residents from large damage awards, Colo. Rev. Stat. §13-21-102.5, Colorado—where the decedent resided and was injured and where Fresenius’ conduct causing that injury occurred—has a greater interest in this matter than Massachusetts. See Restatement (Second) of Conflict of Laws §6, cmt. f (“In general, it is fitting that the state whose interests are most deeply affected should have its local law applied”); see also Restatement (Second) of Conflict of Laws §6, cmt. e (stating that court “is under no compulsion to apply the statute or rule to . . . out-of-state facts [where] the originating legislature or court had no ascertainable intentions on the subject”).
C. The Protection of Justified Expectations
“[T]he protection of the justified expectations of the parties, which is of extreme importance in such fields as contracts, property, wills and trusts, is of less importance in the field of torts ... because persons who cause injuiy on non-privileged occasions, particularly when the injury is unintentionally caused, usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct.” Restatement (Second) of Conflict of Laws §145, cmt. b; see Restatement (Second) of Conflict of Laws §6, cmt. g (“In such situations, the parties have no justified expectations to protect and this factor can play no part in the decision of a choice-of-law question”); see, e.g., Romani, 992 F.Sup. at 79 (“[N]either party seems to have planned its conduct with any legal consequences in mind”). Here, it is just as likely that the decedent would have expected the laws of his home state to apply to any claims arising out of his dialysis treatment as Fresenius would have expected the laws of the state where its product caused harm to apply. This factor therefore weighs in favor of applying Colorado law.
D. Certainty, Predictability, and Uniformity of Result
“[T]he values of certainty, predictability and uniformity of result are of lesser importance in torts than in areas where the parties and their lawyers are likely to *64 give thought to the problem of the applicable law in planning their transactions.” Restatement (Second) of Conflict of Laws §145, cmt. b; Restatement (Second) of Conflict of Laws §6, cmt. i. Here, the parties have not claimed to have “give[n] advance thought to the legal consequences of their transactions.” Restatement (Second) of Conflict of Laws §6, cmt. i. Contrast Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 41 (1st Cir. 2008) (holding that “most relevant factor is ‘certainty, predictability and uniformity’ ” where party “contracted for the services of independent contractors based in different states,” because there would be “greater certainty and predictability for all parties if those contracts, negotiated at similar times and on similar terms, [were] all governed by the same state’s law, rather than by the law of the state where an independent contractor happens to live”).
Accordingly, this factor neither weighs in favor of nor weighs against the application of either state’s law.
E. Ease in the Determination and Application of the Law to be Applied
While certainly application of Massachusetts law would be easier for this state court sitting in Massachusetts to apply, this factor does not outweigh the factors in favor of applying Colorado law. See Restatement (Second) of Conflict of Laws §6, cmt. j (“This policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results”). The parties’ disputes over when the ten-year period begins to run for purposes of the rebuttable presumption, Colo. Rev. Stat. §13-21-403(3), and over whether Colorado has adopted or will adopt Restatement (Third) of Torts: Products Liability §6, do not cause this factor to outweigh the other factors in Colorado’s favor.
F. Conclusion
Application of the factors set forth in Restatement (Second) of Conflict of Laws §6 supports the conclusion that Colorado law applies to this action.
ORDER
For the foregoing reasons, the plaintiffs Motion for Application of Massachusetts Law is DENIED, and this court ORDERS that Colorado law applies to this action.

 Fresenius does not state from where it distributes Granu-Flo.

 As the plaintiff points out, the Court in Buslilcin Assocs., Inc., 393 Mass. at 634 & n.7, included “(alpplication of the better rule of law” among the factors it could consider in determining which state’s laws to apply. This factor is one of five “considerations proposed by Professor [R.A.] Leñar in American Conflicts Law . . . [which] generally parallel the considerations contained in longer lists, including §6(2) of the Second Restatement.” Id. at 634. The Court acknowledged these five Leñar factors in the context of its recognition that “[n]o simple and objective test can provide an acceptable choice-of-law answer . . . [and the Court felt] free ... to borrow from any of the various lists to help focus [its] attention on the considerations particularly relevant to the case before [it].” Id. This court is content to rely on the factors set forth in Restatement (Second) of Conflict of Laws §§6(2), 145. See Mark Thompson, Method or Madness?: The Leflar Approach to Choice of Law as Practiced in Five States, 66 Rutgers L. Rev. 81, 86-89 (2013) (explaining Leflar’s five factors and noting that “better law” factor “is by far the most famous, as well as the most controversial”).

 “[T]he law applicable to wrongful death is selected by the same principles as control selection of the law applicable to personal injuries in general (§146).” Restatement (Second) of Conflict of Laws §175, cmt. a.

 More accurately, the plaintiff characterizes it as a “presumptive starting point for choice of law analysis . . . [that] does not dictate the choice of law.” Plaintiffs Memorandum, at 9.

 As Fresenius points out, the plaintiffs reliance on cases concerning choice of law in the context of statute of limitations conflicts is misplaced. While the court also applies a functional approach to that analysis, it looks to Restatement (Second) of Conflict of Laws §142, pursuant to which “Massachusetts will apply its own statute of limitations to allow the action to proceed unless some exceptional circumstances about the case make it unreasonable to do so or unless, after analyzing the interests of Massachusetts and [the other state], allowing the action to proceed would serve no substantial Massachusetts interest and [the other state] has a more significant relationship to the parties and the [incident at issue] than does Massachusetts.” Anderson v. Lopez, 80 Mass.App.Ct. 813, 815-16 (2011). The court should conduct this analysis “focusing ‘on the statute of limitations issue and noton the underlying tort.’ ” Nierman v. Hyatt Corp., 441 Mass. 693, 696 (2004) (emphasis added) (citation omitted). Cases analyzing the issue of statute of limitations are therefore inapposite.

 This court is not swayed by the plaintiffs argument against this conclusion that GranuFlo was not directly prescribed to the decedent but, rather, the administration of GranuFlo at the decedent’s clinic was a decision the medical director made without the decedent’s input. See Fresenius’ Response, at 9 n.5.

 Notwithstanding the dispute over applicability of Colorado law, the plaintiffs claims fall within this definition.

 In products liability actions in Colorado, there is a rebuttable presumption “that the product which caused the injury, death, or property damage was not defective and that the manufacturer or seller thereof was not negligent” under certain circumstances. Colo. Rev. Stat. 13-21-403(1). The rebuttable presumption exists if: (1) “]p]rior to sale by the manufacturer, [the product] conformed to the state of the art, as distinguished from industry standards, applicable to such product in existence at the time of sale[,]” Colo. Rev. Stat. §13-21-403(l)(a); (2) the product “[c]omplied with, at the time of sale by the manufacturer, any applicable code, standard, or regulation adopted or promulgated by the United States or by [Colorado], or by any agency of the United States or of [Colorado,]” Colo. Rev. Stat. §13-21-403(l)(b); or (3) it has been ten years since the product was “first sold for use or consumption...” Colo. Rev. Stat. §13-21-403(3). If “the court determines by a preponderance of the evidence that the necessary facts giving rise to a presumption have been established, the court shall instruct the jury concerning the presumption.” Colo. Rev. Stat. §13-21-403(4) (emphasis added); see Exhibit A to Plaintiffs Reply Brief (jury instructions on rebuttable presumption issued by Colorado Supreme Court Committee on Civil Jury Instructions).
The plaintiff argues that the existence of this presumption demonstrates that Colorado law protects defendants over *65 plaintiffs in products liability actions, thus the court should not apply Colorado law. The court disagrees. This provision is merely one part of a statutory scheme governing products liability that seeks to hold manufacturers hable for bringing defective products into Colorado’s stream of commerce. See Boles, 223 P.3d at 727. Applying this statutory scheme to Fresenius, which sold its allegedly defective product in Colorado, would further this policy. Moreover, similar to Mass. G. Evid. §301 (d), Colorado Rule of Evidence 301 provides that,
In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.
Evidence to rebut the presumption here does not place any added burden on the plaintiff—notwithstanding the presumption, “[a] plaintiff [still] has the burden of persuasion as to the defective condition of a product . . . [i.e.,] a plaintiff must prove that the product was defective.” Mile Hi Concrete, Inc. v. Matz, 842 P.2d 198, 205 (Colo. 1992); see Board of Assessment Appeals v. Sampson, 105 P.3d 198, 204-05 (Colo. 2005) (contrasting “rebuttable presumption” and “burden of proof,” and holding that, “[a]s a general notion, a rebuttable presumption lends weight to particular inferences from a stated set of facts, but can be overcome by the party against whom the presumption operates” and “imposition of a presumption on an evidentiary point neither relieves a party nor imposes on a party the ultimate burden of proof)”; cf. Kokins v. Teleflex, Inc., 621 F.3d 1290, 1301 (10th Cir. 2010) (holding that 2003 amendment adding Colo. Rev. Stat. §13-21-403(4) effectively overruled Mile Hi Concrete, Inc. insofar as it concerned instructing jury on rebuttable presumption); Exhibit A to Plaintiffs Reply Brief (Colorado Supreme Court Committee on Civil Jury Instructions acknowledges this effective overruling in “Notes on Use”). Thus, the existence of this rebuttable presumption does not weigh against applying Colorado law.

 No separate choice of law analysis is required for damages because “(t]he law selected by application of the rule of §145 determines the amount of damages.” Restatement (Second) of Conflict of Laws §171; see Restatement (Second) of Conflict of Laws §178 (providing similar rule “in an action for wrongful death”). Conversely, “[t]he law governing the right to exemplary damages need not necessarily be the same as the law governing the measure of compensatory damages . . . because situations may arise where one state has the dominant interest with respect to the issue of compensatory damages and another state has the dominant interest with respect to the issue of exemplary damages.” Restatement (Second) of Conflict of Laws, Reporter’s Note to cmt. d. The plaintiff points out that Colorado limits punitive damage awards to “the amount of actual damages” and only under “circumstances of fraud, malice, or willful and wanton conduct,” Colo. Rev. Stat. §13-21-102(l)(a), whereas Massachusetts permits punitive damages in wrongful death cases where “the decedent’s death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant...” G.L.c. 229, §2 (emphasis added). The fact that Colorado does not allow for punitive damages where the defendant has been grossly negligent, while Massachusetts does, and Colorado limits the amount of the punitive damages award, while Massachusetts does not, is insufficient to establish that Massachusetts has a greater interest in applying its own law to this case. The court, however, does not foreclose further argument on the matter of punitive damages. See Restatement (Second) of Conflict of Laws §178.