549 So.2d 395 (1989)
Frederick J. KILDRON and Anne A. Kildron, Appellant,
v.
SHADY OAKS NURSING HOME, ABC Insurance Company and Jacob Strickland, Appellee.
No. 20734-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Daniel P. Parker, Monroe, for appellant.
Hayes, Harkey, Smith, Cascio & Mullens by Haynes L. Harkey, Jr., Monroe, for appellee.
Before HALL, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
Mrs. Anne Kildron, on behalf of her husband Frederick J. Kildron, appeals a judgment rejecting her demands against Shady Oaks Nursing Home, its director Jacob Strickland, and its insurer, St. Paul Fire & Marine Insurance Company, for injuries sustained by Mr. Kildron while he was a patient at the nursing home. Mrs. Kildron contends on appeal the trial court erred in concluding that the nursing home provided *396 Mr. Kildron reasonable care and in failing to award damages. She also argues that the doctrine of res ipsa loquitur should be applied to this case. Finding no manifest error, we affirm.
Mr. Kildron, a 59-year old retired Air Force officer, suffers from Alzheimer's disease, a degenerative disease that permanently affects the nerve root conduction in the brain. As the disease progresses, the patient forgets his family, his friends and his own name, as well as how to do such things as button his shirt, feed himself and use the toilet. Ultimately, the patient regresses back to infancy.
In October 1985, Mrs. Kildron decided that the family was no longer able to care for Mr. Kildron at home and placed him in Shady Oaks Nursing Home (Shady Oaks). Mr. Kildron was ambulatory, but hostile at the placement. He frequently wandered about the nursing home attempting to leave. The doctor's standing orders for Mr. Kildron permitted physical and chemical restraints as needed. Mrs. Deannie Strickland, the director of nurses at Shady Oaks, testified that the staff did not use restraints on Kildron unless absolutely necessary because they made him hostile and agitated. Strickland testified she had received some specialized training in caring for Alzheimer's patients. During the day shift, 7:00 a.m. to 3:00 p.m., when Mr. Kildron was awake and likely to be walking about the nursing home and grounds, she assigned an aide to watch only him because of his aggressiveness and his tendency to wander off. However, on the evening shift, 3:00 p.m. to 11:00 p.m., no aide was assigned to him exclusively since during this period patients were less active, getting ready for the evening meal, eating, dressing for bed and sleeping. During this shift Mr. Kildron was one of 12 to 16 patients attended by one nurse's aide. The aide was directed to check on Mr. Kildron every 30 minutes while he was in his room.
On March 18, 1986, while Mr. Kildron was alone in his room, he somehow fell and fractured his hip. Janice Jones, the aide to whom he was assigned, found him on the floor around 3:45 p.m. The supervising nurse was immediately called, then the doctor, the mobile x-ray unit, Mrs. Kildron and the ambulance. Mr. Kildron was taken to the St. Francis Hospital where he remained until April 11, 1986. He was then transferred to a VA hospital and was still at that facility at the time of trial. After the fall, Mr. Kildron became unable to walk without assistance.
The nurse's aide and the supervisory nurse both testified that Mr. Kildron was not wet and there were no foreign substances on the floor which could have caused him to slip and fall. The record does reflect that Kildron had fallen on two previous occasions while at Shady Oaks. On March 4, 1986, while attempting to sit, Kildron missed the chair and sat on the floor. Earlier on March 18, 1986, Kildron had tripped over another patient's wheelchair in the living room of the nursing home and fallen. In neither instance was he injured.
Mrs. Kildron filed this suit on her husband's behalf against Shady Oaks, its director and its insurer requesting general damages of $600,000 and $100,000 in medical expenses. The trial court found that Kildron was ambulatory, walked about the facility without assistance and had no history of frequent falls. The judge concluded in well written reasons that the nursing home was not negligent, stating in part:
The evidence establishes that from the time Kildron was admitted to Shady Oaks Nursing Home to the occasion of his fall and injury there was no indication nor occurrence which would have reasonably put the nursing home personnel on notice that he should not have been permitted to walk about the facility unassisted. To have prevented plaintiff's injury, under circumstances which brought about his injury it would have been necessary to confine him to a bed or to a wheelchair. * * *
To hold defendants liable for his injuries would be tantamount to making them insurers of his safety.
On appeal, plaintiff argues that the trial court was manifestly erroneous in its conclusion that Shady Oaks provided reasonable *397 care for Kildron considering the circumstances of his condition.
A nursing home is not the insurer of the safety of its patients. Murphy v. Allstate Insurance Co., 295 So.2d 29 (La. App. 2d Cir.1974), writ denied 299 So.2d 787 (La.1974). The standard of care imposed upon a nursing home is that of reasonable care considering the patient's known mental and physical condition. Oswald v. Rapides Iberia Management Enterprises, 452 So.2d 1258 (La.App. 2d Cir. 1984), writ denied 457 So.2d 14 (La.1984); Fields v. Senior Citizens Center, Inc., 528 So.2d 573 (La.App. 2d Cir. 1988). Generally, a nursing home's duty to its residents does not include having an attendant stay with an ambulatory patient at all times. Oswald, supra; Fields, supra. The nursing home is, however, required to take reasonable steps to prevent injury to ambulatory, but mentally confused patients. Booty v. Kentwood Manor Nursing Home, Inc., 483 So.2d 634 (La.App. 1st Cir.1985), writ denied 486 So.2d 754 (La.1986).
Plaintiff contends that Kildron's mental and physical condition warranted restraint or personal supervision at all times. In support of this, she cites Nurse Strickland's testimony that she assigned an aide to be with Kildron at all times during the 7:00 a.m. to 3:00 p.m. shift when he was awake and walking about the nursing home.
The trial court specifically found that the nursing home was not negligent in failing either to restrain or personally supervise and assist plaintiff at all times. We think the trial court's factual findings are supported by this record and we cannot say that the conclusion of no negligence drawn from these findings is legally unfounded. The evidence shows that Mr. Kildron was in fair physical condition, agile and capable of walking about his room, the nursing home and grounds without assistance. He needed supervision when he was outside of his room because he would sometimes wander off and attempt to leave the facility. Although he was at times confused, there is no evidence that this confusion made him unable to walk about in his room. Accordingly, we find no manifest error in the trial court's determination that the nursing home did not breach its duty of care to Mr. Kildron.
Even if we assume that the duty of care owed to Mr. Kildron by Shady Oaks included constant attendance while he was awake, plaintiff failed to show that defendants' breach of this hypothetical duty was in fact a cause of Mr. Kildron's injury. The aides were instructed to watch him lest he leave the nursing home, not to assist him in walking. Had an aide been present in the room, the fall and injury would more probably than not still have occurred; the only potential difference is that Mr. Kildron might have received medical attention a few minutes sooner. Plaintiff does not contend, nor does the evidence show, that more prompt attention would have improved his chances of recovery.
Plaintiff also makes an argument that the doctrine of res ipsa loquitur is applicable to this case and that the nursing home's negligence is therefore presumed. We disagree. There is no presumption of negligence on the part of Shady Oaks merely because Kildon fell and was injured. The doctrine of res ipsa loquitur is inapplicable to this type of situation. Murphy v. Allstate Insurance Co., supra. After showing that it has provided reasonable care for its patients under the circumstances, a nursing home is not liable for injury caused by an untoward event unless it has breached a contractual agreement to furnish special care beyond that usually furnished and the breach relates to the injury sued on. Clark v. Gowen Sanitorium, Inc., 160 So.2d 426 (La.App. 2d Cir.1964).
We find no manifest error in the trial court's determination that the nursing home did not breach its duty of care to Mr. Kildron. The doctrine of res ipsa loquitur is not applicable to this case. The judgment is affirmed at plaintiff's cost.
AFFIRMED.