(988 P.2d 287)

No. 79,624

PAT HOOVER, Executrix for the Estate of BESSIE MOORE, *Appellee*, v. INNOVATIVE HEALTH OF KANSAS, INC., *Appellant.*

Opinion filed September 3, 1999.

*John A. Bausch*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellant.

*Michael L. Hodges*, of Lenexa, for appellee.

Before GREEN, P.J., ROGG, S.J., and CHIPMAN, S.J.

GREEN, J.: Innovative Health of Kansas, Inc., (Sterling Heights), a nursing home, appeals from the trial court's judgment denying its motions for a new trial, judgment notwithstanding the verdict, and remittitur. Sterling Heights argues that the jury verdict was not supported by the evidence, that the verdict was excessive, and that the verdict exceeded the statutory cap of $250,000. Sterling Heights further argues that the verdict form was improper and that the trial court erred in instructing the jury. We affirm in part and reverse in part.

Bessie Moore entered Sterling Heights on May 11, 1992. On August 9, 1994, Pat Hoover, Moore's daughter, sued Sterling Heights on her mother's behalf. Hoover alleged that Moore had fallen and suffered injury on four separate occasions as a result of Sterling Heights' negligence and carelessness. Specifically, Hoover

alleged that Moore was injured in August 1992, when she fell from a wheelchair; in October 1992, when she was discovered on the floor by her bed; in February 1993, when she suffered a broken leg of unknown origin; and in March 1993, when she fell from the toilet.

Sterling Heights moved for partial summary judgment with regard to the August 10, 1992, wheelchair incident; the October 24, 1992, back injury; and the February 9, 1993, broken leg injury. The trial court denied the motion and the case proceeded to jury trial. After a 6-day trial, the jury found Sterling Heights at fault for Moore's injuries from each of the four incidents and awarded the following damages: $500 for pain and suffering and $5,000 for disability, mental anguish, and disfigurement for the August 1992 wheelchair incident; $50,000 for pain and suffering and $200,000 for disability, mental anguish, and disfigurement for the October 1992 incident where Moore was found on the floor by her bed; $7,500 for pain and suffering and $25,000 for disability, mental anguish, and disfigurement for the February 1993 broken leg incident; and $40,000 for pain and suffering and $100,000 for disability, mental anguish, and disfigurement for the March 1993 broken hip incident.

Next, Sterling Heights moved for judgment notwithstanding the verdict, new trial, remittitur, and to alter or amend judgment. After a hearing, the trial court denied the motions.

*Motion for summary judgment*

Sterling Heights moved the trial court for partial summary judgment with regard to three of the four incidents. In its motion, Sterling Heights stated: "The basis of this Motion for Partial Summary Judgement is that, as a matter of law, defendant is not liable for the alleged injuries suffered by Bessie Moore on 8-10-92; is not liable for the alleged 'broken back' injury of 10-24-92; and is not liable for the alleged 'broken leg' injury of 2-9-93."

On appeal, Sterling Heights argues that the trial court erred in denying the motion with regard to the October 1992 and February 1993 falls. The standard by which this court reviews a trial court's

ruling on a motion for summary judgment has consistently been stated as follows:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS,* 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

" '[A]n issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issues does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact.' [Citation omitted.]" *Seabourn v. Coronado Area Council, B.S.A.,* 257 Kan. 178, 189, 891 P.2d 385 (1995).

In its memorandum in support of its motion for summary judgment, Sterling Heights contended that there was no evidence that it had acted negligently in caring for Moore and that her falls and injuries were insufficient to prove negligence. Sterling Heights emphasized deposition testimony that Moore was prone to stress or spontaneous fractures because she was being treated with prednisone and suffered from osteoporosis. Sterling Heights argued that because Moore's injuries could have resulted from sources other than the various falls, Hoover could not prove that Sterling Heights had breached its duty of care. Sterling Heights emphasizes that at the time of Moore's falls in October 1992 and February 1993, there were no written orders for restraints. Sterling Heights further argues that "[u]nexplained falls, even where the resident is unattended, does not establish fault on the part of a nursing home. The duty of a nursing home does not include having someone follow the patient around at all times."

For support, Sterling Heights quotes from Annot., 83 A.L.R. 3d 871, "Patient Tort Liability of Nursing Home," § 2[b], and cites the cases therein which discuss the difficulty in proving causation in unattended fall, negligence cases. In her response to the motion

for summary judgment, Hoover maintained that Sterling Heights failed to restrain Moore when restraints were ordered and neglected to report her various injuries to her physician. Hoover also contended that Sterling Heights failed to implement preventative procedures as it became increasingly clear that Moore was at risk for falls and injury. Hoover further contended that the issue of whether Sterling Heights had breached its duty of care to Moore should be a question for the jury.

The trial court found Hoover's arguments persuasive and determined that Hoover had produced sufficient facts to raise a jury question as to causation and whether Sterling Heights had violated its duty to Moore. The trial court stated:

> "Although, especially as to the broken leg incident, plaintiff's evidence is not overwhelming, the court is of the opinion that the plaintiff has produced sufficient facts to present a question for the jury as to whether or not the defendant violated its duty to exercise reasonable care to avoid injuries to Ms. Moore. *Not only are there questions of whether the duty was violated, but there are also questions of causation and damage which must be resolved by the jury*." (Emphasis added.)

In the instant case, the primary issue of causation was intensely disputed. Because there was conflicting evidence as to the causes of Moore's injuries, genuine issues of material fact existed as to whether Sterling Heights breached its duty of care to Moore. Because summary judgment is only appropriate where there is no genuine issue as to any material fact, the trial court did not err in denying the motion for summary judgment. As a result, Sterling Heights' argument fails.

*Statutory cap*

Sterling Heights argues that the trial court erred in failing to apply the statutory cap for noneconomic damages set out in K.S.A. 60-19a02, which states:

> "(a) As used in this section *'personal injury action'* means any action seeking damages for personal injury or death.
> "(b) In any *personal injury action*, the total amount recoverable by *each party* from all defendants for *all claims* for noneconomic loss shall not exceed a sum of $250,000.
> . . . .

"(d) . . . If the verdict results in an award for noneconomic loss which exceeds the limit of this section, the court shall enter judgment for $250,000 for all the party's claims for noneconomic loss. . . .

. . . .

"(f) The provisions of this section shall apply only to *personal injury actions* which are based on causes of action accruing on or after July 1, 1988." (Emphasis added.)

"Interpretation of a statute is a question of law, and this court's review is unlimited. [Citation omitted.]" *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

In its brief, Sterling Heights argues that Hoover filed *one personal injury action* within the meaning of the statute and that the cap of $250,000 is applicable and should be applied to reduce the award. For support, Sterling Heights cites *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 856 P.2d 906 (1993). In *Cott*, the plaintiffs argued that the statutory cap only applies to negligence claims, and, therefore, the cap should not apply to their cause of action for breach of express warranties. Rejecting this argument, the court stated:

"The plain language of K.S.A. 1992 Supp. 60-19a02 requires noneconomic damage awards be capped at $250,000 in personal injury actions, which are defined as 'any action seeking damages for personal injury or death.' In other words, the statutory cap is applicable to any suit, including breach of express warranty, in which personal injuries are claimed, as in the case at bar." 253 Kan. at 492.

Borrowing from *Cott*, Sterling Heights argues that this court should follow the plain language of the statute.

Conversely, Hoover argues that the cap should not apply because her lawsuit included four separate and distinct actions which could have been filed separately. For support, Hoover cites *Jordan v. Long Beach Community Hosp.*, 201 Cal. App. 3d 1402, 248 Cal. Rptr. 651 (1988) (this opinion was ordered withdrawn from publication by the California Supreme Court and has no precedential value); *Knowles v. United States of America*, 544 N.W.2d 183 (S.D. 1996) (although parent's action was derivative from child's, there were two separate actions with regards to damages and, thus, two statutory caps); *Sander v. Geib, Elston, Frost Pro. Ass'n*, 506 N.W.2d 107, 126-27 (S.D. 1993) (statute limiting recovery for per-

sonal injury or death applies separately to cause of action for personal injury and cause of action for wrongful death). However, each of these cases is distinguishable as there were multiple plaintiffs in each case. Because these cases are factually distinguishable from the instant case, they furnish minimal guidance on this issue.

In ruling on this issue in Sterling Height's motion for new trial, the trial court reasoned:

"The problem presented in this case by the wording of K.S.A. 60-19a02 is that plaintiff could have filed a separate lawsuit for each incident set forth in the petition since each involves allegations of a separate and distinct act of negligence on the part of the defendant and resulting injury on the part of the plaintiff. Pursuant to K.S.A. 60-218 these claims may, but do not have to, be joined in a single lawsuit. *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138 (1975). Thus, if the interpretation of the statute put forward by the defendant is adopted, the plaintiff is penalized for consolidating her claims into one lawsuit as permitted by the code of civil procedure.

"K.S.A. 60-19a02 refers to 'personal injury action,' 'action' and 'causes of action' at various places within the statute. It is the court's belief that these terms are used by the legislature interchangeably and are intended by the legislature to mean the same thing. In *Wells, Administrator v. Ross*, 204 Kan. 676, 465 P.2d 966 (1970), the Supreme Court (quoting 46 Am. Jur. 2d, Judgments, § 406, p. 574) discussed the term 'cause of action' as follows:

" 'The term "cause of action" is not easily defined, and the authorities have laid down no thoroughly satisfactory and all-embracing definition; it may mean one thing for one purpose and something different for another. A fundamental test applied for comparing causes of action, for the purpose of applying principles of res judicata, is whether the primary right and duty, and delict or wrong, are the same in each action. Under this test, there is but one cause of action where there is but one right in the plaintiff and one wrong on the part of the defendant involving that right. In general, it may be said that under the doctrine of res judicata, a judgment bars relitigation of the same controversy.' 204 Kan. at 678-679.

Using this definition, each of the plaintiff's claims in this case involves a separate cause of action.

. . . .

"The court finds that under K.S.A. 60-19a02 when separate causes of action are joined together in the same petition, the cap on recovery of damages for noneconomic loss shall be applied separately to each claim in the petition which could have been the subject of a separate lawsuit had the plaintiff not chosen to join the claims in a single lawsuit."

In the instant case, the parties quote equally applicable general rules of statutory construction. Sterling argues that the statute is

clear and unambiguous and that this court should follow the plain language of the statute. In this vein, our Supreme Court has instructed:

"When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. . . . [W]hen a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

On the other hand, Hoover argues that Sterling Height's interpretation of the statute discourages judicial economy. Hoover argues that this is an unreasonable interpretation of the statute. " ' "As a general rule, statutes are construed to avoid unreasonable results. [Citation omitted.] There is a presumption that the legislature does not intend to enact useless or meaningless legislation. [Citation omitted.]" ' " *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 635, 643, 941 P.2d 1321 (1997).

Since K.S.A. 60-218 was intended to promote judicial economy and prevent a multiplicity of lawsuits, Hoover's argument that a separate cap should apply to each independent claim has merit. Nevertheless, the statutory language of K.S.A. 60-19a02(b) clearly states that "the total amount recoverable by *each party* from all defendants for *all claims* for noneconomic loss shall not exceed a sum of $250,000." (Emphasis added.) As a result, K.S.A. 60-19a02 mandates that noneconomic damages awarded for each of Hoover's independent claims be aggregated under one statutory cap on noneconomic damages. Because the judgment for all of Hoover's claims for noneconomic damages exceeded $250,000, the trial court erred when it failed to enter a judgment in the amount of $250,000 for noneconomic damages.

*Motion for directed verdict*

Sterling Heights also argues that the trial court erred in denying its motion for directed verdict. However, that motion was made orally at the close of the plaintiff's evidence. Significantly, the motion was made outside the presence of the jury and was not tran-

scribed. Therefore, this court cannot review the arguments made in the motion or the trial court's ruling for error. It is well settled that " '[a]n appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails.' " *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994).

*Motions for judgment notwithstanding the verdict and new trial*

Sterling Heights also argues that the trial court erred in denying its motions for judgment notwithstanding the verdict and new trial as to the October 1992 and February 1993 falls. This court's standard of review of a motion for judgment notwithstanding the verdict is the same as that for a directed verdict. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 683, 829 P.2d 884 (1992) (quoting *Turner v. Halliburton Co.*, 240 Kan. 1, Syl. ¶ 1, 722 P.2d 1106 [1986]).

"When appellate review is sought on a motion for directed verdict, 'the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence,' the trial court's denial of the motion must be affirmed." *Kuhl v. Atchison, Topeka & Santa Fe Rwy. Co.*, 250 Kan. 332, 342, 827 P.2d 1 (1992).

" 'The granting of a new trial is a matter of trial court discretion and, as with all discretionary matters, will not be disturbed on appeal except by a showing of abuse of that discretion.' [Citation omitted.]" *Peppermint Twist*, 253 Kan. at 458.

*A. Judgment notwithstanding the verdict*

In its judgment notwithstanding the verdict motion, Sterling Heights argued "[t]hat, as a matter of law, the evidence did [not] support a verdict for the Plaintiff in reference to the alleged four falls Bessie Moore sustained while a resident at Sterling Heights." With regard to the October 1992 and February 1993 falls, Sterling Heights argued:

"On 10-24-92 Bessie Moore was found by a nurses aide lying on her right side on the floor. During the night of 10-22-92, Bessie Moore had attempted eight times to get out of bed and the nurses were alert enough during the night shift to prevent Bessie Moore from getting out of and/or falling out of bed. Based upon

a call to Dr. Fulbright, restraint orders were issued restraining Bessie Moore during the night while in bed and during the day also while in bed. There were no other restraint orders in place. Bessie Moore was found at 9:00 a.m. on 10-24-92. This unexplained fall is not, as a matter of law, a basis for liability on the part of a nursing home. . . .

"On 2-9-93, while at Shawnee Mission Medical Center (SMMC), an x-ray disclosed that Bessie Moore suffered a non-displaced fracture of the left leg. Plaintiff's attorney attributes that to a fall at the nursing home in December 1992. There was no history of a definite fall in December 1992 or in February 1993 and here again, we have an incident of an unexplained fall which, as a matter of law, does not support liability against this Defendant.

. . . .

"[C]ases and other citations in support of this Motion can be found in this Defendant's Motion for Partial Summary Judgment heretofore filed in this case. Then, the underlying rule of law is that unexplained and unpredictable falls such as those which occurred . . . do not form a basis of liability on the part of the Defendant in this case."

Sterling Heights reiterates these arguments on appeal and argues that the trial court erred in denying its motion for judgment notwithstanding the verdict. However, in ruling on the judgment notwithstanding the verdict motion, the trial court was required to resolve all facts and inferences drawn from the evidence in favor of Hoover. Thus, the trial court's description of the evidence differed substantially from that presented by Sterling Heights. With regard to the October 1992 and February 1993 incidents, the trial court found that there was sufficient evidence to sustain the verdict. The trial court described the evidence as follows:

"B. *Back injury*. At 9:00 a.m. on October 24, 1992, Ms. Moore was found by a nurse's aide lying on her right side on the floor near her bed. During the night of October 22, 1992, Ms. Moore had attempted to get out of bed eight times, but did not fall. The incidents were reported to Ms. Moore's physician, Dr. Fulbright, and he issued orders to restrain Ms. Moore during the night and during the day while in bed. These restraint orders were in place on October 24, 1992, when the injury occurred. Sandra Wretling testified that the injury to Ms. Moore was caused by the negligence of defendant. Dr. Fulbright testified that the incident would not have occurred if his orders had been followed. If Ms. Moore was not restrained in bed she should have been in a geri-chair.

"C. *Broken Leg*. On February 9, 1993, while in a weakened condition as a result of the back injury, Bessie Moore was taken to Shawnee Mission Hospital because of pain. An x-ray disclosed that Ms. Moore suffered a non-displaced fracture of the left femur. Plaintiff's medical experts testified that a fracture of a heavy bone

such as the femur could not have occurred absent a fall or other trauma. At the time of the injury Ms. Moore was a 'total assist' patient. She could no longer function on her own. She had to have assistance in meeting all of her everyday needs. Sandra Wretling testified that it was a deviation from the standard of care imposed upon the defendant for the defendant to allow a person in Ms. Moore's condition to sustain an injury such as the broken femur. Additionally, plaintiff introduced evidence that the defendant did not report the incidents as required by law. Plaintiff introduced testimony that this is negligence on defendant's part. Plaintiff maintains that the failure to report is a proximate cause of the broken leg, in that had the earlier incidents been reported and investigated by the State, the plaintiff would have known that her mother was being inadequately cared for and could have removed her mother from defendant's facility."

In arguing that the trial court erred, Sterling Heights' ignores the evidence in support of the verdict and emphasizes that which supports its motion. However, the trial court properly construed the evidence in the light most favorable to Hoover in ruling on Sterling Heights' judgment notwithstanding the verdict motion. As a result, Sterling Heights' argument fails.

### B. New trial

Sterling Heights also argues that the trial court erred in denying its motion for new trial based upon a lack of evidence as to the October 1992 and February 1993 incidents. In its motion for new trial, Sterling Heights repeats the arguments made in its motion for summary judgment and judgment notwithstanding the verdict with regard to these two incidents. As set out above, ample evidence existed to support the jury's finding that Sterling Heights breached its duty of care on these incidents. Thus, the trial court did not abuse its discretion in denying the motion for new trial on these issues.

In its motion for new trial, Sterling Heights also argued that the verdict was contrary to the evidence or given under the influence of passion or prejudice. On appeal, Sterling Heights repeats these arguments and states in its brief:

"The jury returned a total verdict of $102,000 for Bessie Moore's pain and suffering and $330,000 for 'disability, disfigurement and mental anguish.'

"There was no evidence that Bessie Moore was disabled or suffered mental anguish from any of these four (4) incidents. There was no evidence that she sustained any disfigurement in any of the first three (3) incidents. The surgical

scar on her hip from incident four (4), was not described nor were photographs of it shown to the jury. As a result, disfigurement was not a proper element of damages in this case."

Again, Sterling Heights points to evidence which supports its argument that there was a dearth of evidence to support the verdict. However, Sterling Heights fails to explain or respond to the trial court's findings on this issue. In denying Sterling Heights' motion for a new trial on this issue, the trial court noted the following testimony and stated:

"The defendant argues that there is insufficient evidence to support the jury's award of damages to plaintiff for disability, disfigurement and mental anguish.

"As to the wheelchair incident, the plaintiff, Pat Hoover, testified that she was called to the nursing home following the wheelchair incident and her mother was crying, was afraid, and couldn't say what was wrong. In September, following the wheel chair fall, the nursing home called Pat Hoover and asked her to approve an evaluation of Ms. Moore by a psychiatrist because she was becoming combative. The nursing home notes made by the social worker state that Ms. [Moore] no longer wanted to participate in activities and was depressed. Dr. Fulbright [Ms. Moore's personal physician] testified concerning her condition and the full nursing home records were available for the jury to review. They indicate changes in her behavior and condition. This evidence is sufficient to support the award by the jury of $500 for pain and suffering and $5,000 for mental anguish.

"Following the back injury Ms. Moore became a total assist patient. Her physical condition deteriorated. She had to be assisted in every activity. She was given medication for pain. Evidence concerning her condition came from the testimony of Dr. Fulbright, Dr. Reeves, Pat Hoover, and other nursing home personnel, and from the nursing notes contained in the nursing home records. Dr. Reeves and Dr. Dennis testified to the seriousness of the back injury and to the amount of pain that a 'burst' fracture, where a piece of bone is injected into the spinal canal, would cause for the patient. The doctors testified that Ms. Moore would not suffer less pain because of her age and condition. She could no longer participate in any of the nursing home activities. There is sufficient evidence to support an award of damages by the jury for disability and mental anguish.

"Defendant argues that there is no evidence that Ms. Moore had pain, suffering, disability, disfigurement, or mental anguish as a result of the broken femur. The physicians called by the plaintiff testified that a broken femur is a painful injury. It is one of the heaviest bones in the body. There are nurse's notes following the injury which indicate that [Ms. Moore] was in pain. The reason she was taken to the hospital in the first place was because she was in pain and distress. The defendant's argument is that since Ms. Moore was totally disabled before the leg injury she could not become more disabled after the injury. Clearly, whatever use she had of her leg before the injury was restricted even further by the injury.

There is evidence from which the jury could find that Ms. Moore suffered pain, increased disability and increased mental anguish as a result of the leg injury.

"Defendant argues that any pain or mental anguish suffered by Ms. Moore as a result of the broken hip is duplicative of pain she was already suffering from her previous injuries. Ms. Moore had surgery as a result of the broken hip. Her movement was further restricted. She had a surgical scar. She developed a decubitus ulcer, which the various experts testified is painful. . . . There is evidence to support the jury's finding that plaintiff suffered damage for pain and suffering, disability, disfigurement and mental anguish as a result of the hip injury."

In *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 278, 875 P.2d 949 (1994), our Supreme Court articulated this court's standard of review of an award for pain and suffering as follows:

"In reviewing an award for pain and suffering, a noneconomic element of damages, this court must review the record to determine if there is evidence to support the jury's determination of damages. This court's standard of review of a jury's award of noneconomic damages is well established. Pain and suffering have no known dimensions, mathematical or financial. *There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents.* For this very practical reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of the jurors, who may be expected to act reasonably, intelligently, and in harmony with the evidence. *Such awards are overturned only if the collective conscience of the appellate court is shocked.*" (Emphasis added.)

Moreover, in explaining that it is the jury's province to determine the amount of damages sustained, our Supreme Court stated:

"In this jurisdiction the kind of proof required to establish the essential elements of damage involved in a tort action may be different but when the evidence with respect thereto is all in and it affords data, facts, and circumstances reasonably certain from which liability, and actual loss can be determined, it is the jury's province to determine the amount of damages sustained on the basis of such evidence. This, we may add, is so even though no witness has testified in the case expressing an opinion as to the amount of such damages." *Albin v. Munsell*, 189 Kan. 304, 311, 369 P.2d 323 (1962).

Here, the issue of damages was contested throughout the trial. On appeal, Sterling Heights focuses on Moore's preexisting conditions and its own evidence that she suffered minimal pain and little or no disfigurement. However, Hoover's witnesses presented

ample evidence of Moore's pain and suffering, disfigurement, and mental anguish. The credibility of the witnesses was for the jury to decide, as was the appropriate amount of damages to compensate the plaintiff. The trial court did not abuse its discretion in denying the motion for new trial based upon the size of the noneconomic damages awarded.

*Jury instructions/verdict form*

Next, Sterling Heights argues that the trial court erred in instructing the jury. Specifically, Sterling Heights repeats its earlier argument that there was no evidence of disability, disfigurement, or mental anguish, as there was no evidence to support these damages. Sterling Heights also complains that the composition of the verdict form caused the jury to award duplicative damages by "breaking pain and suffering and disability, disfigurement and mental anguish down into two categories." Finally, Sterling Heights argues that the trial court erred in failing to give its proposed instructions 10 through 13.

The following rules govern this court's review of jury instructions:

" 'It is the duty of the trial court to properly instruct the jury upon a party's theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal.' [Citation omitted.]" *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 12, 899 P.2d 1013 (1995).

"A party is entitled to an instruction explaining its theory of the case where there is evidence to support it. However, refusing to give an instruction is not error when its substance is adequately covered in other instructions. A court should not by its instructions unduly emphasize one aspect of a case. [Citation omitted.]" *Guillan v. Watts*, 249 Kan. 606, 617, 822 P.2d 582 (1991).

See *Laterra v. Treaster*, 17 Kan. App. 2d 714, 728, 844 P.2d 724 (1992).

During the instructions conference, Sterling Heights reiterated its arguments that there was no evidence of disfigurement, disability, and mental anguish. Although the evidence was conflicting,

there was some evidence of disfigurement, disability, and mental anguish. Thus, the trial court properly instructed the jury on those issues.

In addition, Sterling Heights argues that the trial court erred in providing separate lines on the form for (1) pain and suffering and (2) disability, disfigurement, and mental anguish. However, Sterling Heights objected to the inclusion of disability, disfigurement, and mental anguish on the verdict form because it believed there was no evidence to support those damages. Moreover, K.S.A. 60-249a(b)(1) requires that the verdict form be itemized for noneconomic damages in the following manner: "(A) Pain and suffering, (B) disability, (C) disfigurement, and any accompanying mental anguish." This subsection clearly states that the verdict form should itemize these damages separately. See also *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 380-81, 819 P.2d 587 (1991) (Our Supreme Court found no fault with a special verdict form itemizing pain and suffering damages separate from disability damages.) As a result, Sterling Heights' argument fails.

Finally, Sterling Heights argues that the trial court erred in denying its request to include its proposed instructions setting out the general statements from Annot., 83 A.L.R. 3d 875, and the cases cited therein. Sterling Heights' proposed instructions read as follows:

"INSTRUCTION NO. 10

"A nursing home is not a insurer for the safety of its residents. There is no requirement that a nursing home guard against something which a reasonable person would not anticipate as likely. The duty of the home does not ordinarily include having someone follow the resident around at all times because of the impracticality of such a requirement.

"A nursing home is not a hospital and what may be negligence in a hospital, because of its greater control over physicians and [its] more extensive facilities, would not be negligence in a nursing home. (83 ALR 3d 875)."

"INSTRUCTION NO. 11

"A nursing home is not required to have attendants stay with ambulatory residents at all times and the standard of care imposed upon a nursing home is that of reasonable care considering resident's known mental and physical condition. (*Kildron v. Shady Oaks Nursing Home*, 549 So. 2d 395)."

## "INSTRUCTION NO. 12

"The mere happening of an accident or fall at a nursing home does not give rise to an inference of negligence. Negligence cannot be implied simply because there was a fall in as much as a [resident's] fall can be occasioned with or without negligence on the part of the nursing home.

"The mere fact that a resident fell in a nursing home does not create an inference of negligence since it is equally probable that elderly people in nursing homes frequently fall. (*Ivy Manor Nursing Home, Inc. v. Brown*, Colo. App., 488 P.2d 246) (*Tait v. Western World Ins. Co.*, LA. 220 S. 2d 226)."

## "INSTRUCTION NO. 12(a)

"You are further instructed that the mere fact that a nursing home resident falls does not create an inference of negligence since it is equally probable that residents sometimes fall in the same manner that old people frequently fall. It may be inferred that a resident's fall at a nursing home was occasioned without negligence as with negligence. (*Tait v. Western World Ins. Co.*, 220 So. 2d 226) (*Ivy Manor Nursing Home, Inc. v. Brown*, Colo. App., 488 2d 246)."

## "INSTRUCTION NO. 12(b)

"In the absence of a showing that nursing home resident's injury was the direct and proximate result of nursing home operator's failure to assist resident, with possible inference that resident could just as well have fallen out of bed, tripped while walking about her room, or any of a number of other possibilities, nursing home operators are not liable for the resident's injuries. (*MacAlpine v. Martin*, Fla., 205 So. 2d 347)."

## "INSTRUCTION NO. 13

"An unknown impact or twisting causing [patient's] injury during her residence in nursing facility, does not necessarily establish a case of negligence against the nursing home. In order for there to be fault on the part of the nursing facility, the impact and twisting must be based on probabilities and not possibilities. If there are two equally probable causes of harm, there must be evidence which will permit you to eliminate one of them and there must be enough evidence to permit a finding as to the greater probability.

"You [cannot] and should not engage in conjecture and speculation as to the source of any injury suffered by Bessie Moore. Instead, the cause of the impact, twisting or injury must be based on probabilities and not possibilities. In cannot be based upon an injury resulting from the resident's normal activities. (*Bunn v. Urban Shelters and Health Care Systems, Inc.*, 762 Atlantic 2d 1056)."

During the instructions conference, Sterling Heights argued that the above instructions should be given to the jury. When Sterling Heights failed to provide Kansas authority for its proposed instructions, the trial court stated that it would not include the instructions

but would follow PIK on the issue of proximate cause. The trial court gave the following instructions:

## "INSTRUCTION 7

"It is the duty of a nursing home to a resident to exercise such reasonable care as her condition may require. The degree of care depends upon the known physical and mental ailments of the resident.

"In matters of medical or scientific nature, the standard of reasonable care of a nursing home is that degree of care, skill, and diligence used by nursing homes generally in the community, or in similar communities, under like circumstances."

## "INSTRUCTION 13

"You shall determine the amount of damage sustained by . . . Bessie Moore. You should allow the amount of money which will reasonably compensate plaintiff for Bessie Moore's injuries and losses resulting from the occurrences in question including any of the following shown in the evidence: pain, suffering, disabilities, or disfigurement, and any accompanying mental anguish suffered by Bessie Moore to the date of her death.

"In determining the amount of damages you should consider Bessie Moore's age, condition of health before and after, and the nature, extent and duration of the injuries. For such items as pain, suffering, disability, and mental anguish there is no unit value and no mathematical formula the court can give you. You should allow such sum as will fairly and adequately compensate plaintiff for the injuries to Bessie Moore. The amount to be allowed rests within your sound discretion."

These instructions fairly state the law in Kansas on the issues of causation and damages. Although Sterling Heights argues that the above instructions were "too general in nature," they are substantially correct and could not reasonably have misled the jury. As a result, Sterling Heights' argument fails.

Affirmed in part and reversed in part.