**Kristie DANIEL, Earl Daniel, individually and as guardians and next friends of Jennifer Daniel, an infant under the age of eighteen, Plaintiffs,**

v.

**Bonnie BEAVER, M.D., et al., Defendants.**

No. CIV.A.3:02–0174.

United States District Court, S.D. West Virginia, Huntington Division.

Feb. 6, 2004.

---

Scott S. Segal, Deborah L. McHenry, Mark R. Staun, The Segal Law Firm, Charleston, for Kristie Daniel, Earl Daniel, and Jennifer Daniel, plaintiffs.

Rebecca Craycraft Brown, Thomas L. Craig, Bailes Craig & Yon, Huntington, for Cabell Huntington Hospital, Inc., defendant.

Edward M. Kowal, Jr., Dustin C. Haley, Campbell Woods Bagley Emerson McNeer & Herndon, Huntington, for John Doe, M.D., defendant.

Troy N. Giatras, Giatras & Webb, Don R. Sensabaugh, Jr., Alonzo D. Washington, Flaherty Sensabaugh & Bonasso, Charleston, for Peter Chirico, M.D., Donald Lewis, M.D., Richard McWhorter, M.D., Michael Korona, M.D., Roger Blake, M.D., Torin Walters, M.D., Alan J. Cochrane, M.D., Rick Compton, M.D., William Sheils, Jr., M.D., Radiology, Inc., defendants.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the court is the Plaintiffs' Motion *In Limine* for a Pre–Trial Ruling Regarding the Application of West Virginia Code Section 55–7B–8 and For a Ruling That Each Separately Read, Interpreted, Dictated and Billed–For Radiology Consultation Is a Separate Occurrence (Plaintiffs' Motion) [Docket 113]. I previously granted the defendants' request for permission to file a supplemental memorandum at the close of discovery on the issue of whether each radiology consultation constituted a separate occurrence. For the reasons discussed below, I now FIND that West Virginia Code § 55–7B–8, as enacted at the time of the alleged occurrences of medical malpractice here, limited an individual health care provider's liability for an occurrence of medical malpractice to $1,000,000. Section 55–7B–8 did not limit the total amount a plaintiff could recover in a single action from different health care providers for their separate acts of medical malpractice.

## BACKGROUND

On February 28, 2002, the plaintiffs, Kristie and Earl Daniel, filed a complaint on behalf of their infant daughter, Jennifer Daniel, asserting claims for medical malpractice against defendants Bonnie Beaver, M.D., University Physicians & Surgeons, Inc., Cabell Huntington Hospital, Inc., and John Doe, M.D. The claims arose out of medical treatment received by Jennifer Daniel at Cabell Huntington Hospital between December 29, 2000, and February 23, 2001.

On January 15, 2003, the plaintiffs filed a motion seeking permission to amend their complaint pursuant to Fed. R. Civ. Pro. 15 to add the Joan C. Edwards School of Medicine at Marshall University/Mar-

shall University Board of Governors and Radiology Inc. as defendants, along with nine individual radiologists.[1] Each of the individual defendants treated Jennifer Daniel at least once between December 29, 2000, and February 23, 2001. I granted the plaintiffs' motion, and the plaintiffs filed an amended complaint on February 7, 2003. Dr. Beaver, University Physicians & Surgeons, Inc., and the Joan C. Edwards School of Medicine at Marshall University/Marshall University Board of Governors have since been dismissed from the case after reaching a settlement with the plaintiffs.

The plaintiffs now seek "a pre-trial determination regarding the application of W. Va.Code § 55–7B–8 regarding limits on liability, and for a ruling that there is *not* a one million dollar non-economic loss cap applicable to this case." *See* Plaintiffs' Motion at 1–2 (emphasis in original). At the time of Jennifer Daniel's medical treatment by the remaining defendants, Section 55–7B–8 read as follows: "In any medical professional liability action brought against a health care provider, the maximum amount recoverable as damages for non-economic loss shall not exceed one million dollars and the jury may be so instructed."[2] The plaintiffs argue that, "[a] plain and literal reading of the [statute] dictates that a one million dollar noneconomic damage cap, applies to *each* defendant medical provider, as the statute refers to medical providers in the singular." Plaintiffs' Motion at 4 (emphasis in original). In re-

sponse, the radiologist defendants argue that, "[w]ithout specific language to the contrary, caps on non-economic damages are to be applied to the aggregate of all claims a plaintiff may have arising from a single occurrence or injury." Radiology Defendants' Response [Docket 115] at 5. Cabell Huntington Hospital, Inc. has also responded, arguing that, "[g]iven that the purpose of the cap is to limit liability for non-economic loss, the cap would be rendered ineffective if the plaintiffs, herein were simply allowed to multiply the non-economic loss recovery by the number of defendants in this civil action." Cabell Hospital Response [Docket 126] at 12.

## DISCUSSION

### 1. This court has previously considered the proper interpretation of West Virginia Code Section 55–7B–8.

This court has previously considered whether the $1,000,000 cap in W. Va.Code § 55–7B–8 applies to a defendant's total liability or a plaintiff's total recovery. In *Juanita Stanley, et al. v. St. Mary's Hospital of Huntington, Inc.*, et al., No. 3:95–0887, I addressed the issue at a pretrial conference. Following are relevant portions of the conference transcript:

The question is whether the cap applies as an overall limit to the plaintiffs' recovery of noneconomic damages or whether the cap applies to the limit of liability of the individual defendants for noneconomic damages .... The statute is reasonably susceptible of either inter-

---

**1.** The radiologist defendants, each of whom is associated with Radiology, Inc., are Peter Chirico, M.D., Donald Lewis, M.D., Richard McWhorter, M.D., Michael Korona, M.D., Roger Blake, M.D., Torin Walters, M.D., Alan J. Cochrane, M.D., Rick Compton, M.D., and William Sheils, Jr., M.D.

**2.** The statute was amended in 2003. Section 55–7B–8 now reads, in relevant part: "(a) In any professional liability action brought

against a health care provider pursuant to this article, the maximum amount recoverable as compensatory damages for noneconomic loss shall not exceed two hundred fifty thousand dollars per occurrence, regardless of the number of plaintiffs or the number of defendants or, in the case of wrongful death, regardless of the number of distributees, except as provided in subsection (b) of this section." The amended statute applies to causes of action filed on or after July 1, 2003.

pretation in my view. Because this is a diversity case applying West Virginia law, the question becomes how the West Virginia Supreme Court of Appeals would apply this provision .... Based on the language of the statute and the reasoning of the Supreme Court in [*Robinson v. Charleston Area Medical Center*, 186 W.Va. 720, 414 S.E.2d 877 (W.Va.1991) ], this court believes that the West Virginia Supreme Court of Appeals would find that the $1 million cap on noneconomic damages would apply to limit each defendant's liability in this case, for a total of a $2 million cap, and not as an overall cap on plaintiffs' recovery.

*Stanley*, No. 3:95–0887, Pretrial Conference (October 22, 1996).

I noted three aspects of the statute in support of my conclusion. First, the section's title is "Limit on liability," rather than "Limit on noneconomic recovery." *Id.* at 6. In other words, the section focuses on the potential liability of a health care provider, rather than on the total amount a plaintiff may recover in a single action. Because there is a "limit on liability," no individual health care provider will be held liable for noneconomic damages greater than that amount for a single occurrence of medical malpractice; Section 55–7B–8 is silent, however, as to how much a plaintiff can recover from multiple health care providers.

Second, the language of Section 55–7B–8 provided that the cap applies "in any medical professional liability action brought against *a health care provider.*" *Id.* at 7 (emphasis added). In 2000 and 2001, the section did not state, as it could have, that, "[i]n any medical professional liability action, a cap applies." *Id.* Nor did it state, as it now does, that there is a maximum amount recoverable regardless of the number of defendants in an action. In any number of ways, the West Virginia legislature might easily have worded the statute to apply to all defendants in an action, rather than to "a health care provider."

Finally, I noted at the *Stanley* hearing that the allegations against the two defendants were separated in time and concerned separate occurrences, "for whatever that's worth." *Id.*

In interpreting the statute in *Stanley*, I was also influenced by the West Virginia Supreme Court of Appeals's decision in *Robinson v. Charleston Area Medical Center, Inc.* There, an infant's parents had brought suit on the infant's behalf alleging medical malpractice against an obstetrician/gynecologist. *See Robinson*, 414 S.E.2d at 881. The jury awarded the infant $2,500,000 for past, present, and future loss of enjoyment of life and other noneconomic damages. The jury also awarded $1,000,000 to each of the infant's parents for noneconomic damages. *Id.* The issue before the Supreme Court of Appeals was the constitutionality of Section 55–7B–8, and the court found that the section "does not violate the state constitutional equal protection, special legislation, state constitutional substantive due process, 'certain remedy,' or right to jury trial provisions." *Id.* at 888.

More relevant to the instant case, the *Robinson* court also considered whether the statutory cap "applies to the aggregated claims of all plaintiffs, as opposed to each plaintiff separately." *Id.* The court decided that the cap applies to the aggregated claims of all plaintiffs and set aside the additional $3,500,000 awarded by the jury to the three plaintiffs for noneconomic damages. *Id.* at 888–89. In so ruling, the court stated:

> The language of the statutory 'cap' ... is phrased in terms of the maximum amount recoverable from a health care provider, not in terms of the maximum amount recoverable by a plaintiff. Stat-

ed another way, the very high statutory 'cap' in question is, with respect to each defendant health care provider, on a 'per occurrence' basis, rather than on a 'per person' ('per plaintiff') basis.

*Id.* at 888.

In their response brief in the instant case, the radiology defendants argue that the *Robinson* court's use of "per occurrence" implies that the cap cannot be applied "per defendant." Radiology Defendants' Response at 4. That argument puts more weight on the "per occurrence" language than it can support. The defendants' reading ignores the court's use of the phrase, "with respect to each defendant health care provider." *Robinson* stands for the proposition that where a single health care provider's act of negligence injures more than one plaintiff, Section 55–7B–8 limits that health care provider's total liability for noneconomic damages sustained by all plaintiffs to one million dollars. In applying *Robinson* to the facts of *Stanley,* I interpreted the court's language-particularly the phrase "with respect to each health care provider"-to indicate the court's view that multiple health care providers could be subject to multiple damages limits. By noting that the statute is not phrased in terms of "the maximum amount recoverable by a plaintiff," the Supreme Court of Appeals left open the possibility that, while a single defendant's liability to all plaintiffs in an action is capped, a plaintiff's total recovery from all defendants in an action is not.

## 2. Case law from other jurisdictions with similar statutes is inconsistent.

Because the issue now before me has not been directly addressed by the West Virginia Supreme Court of Appeals, I am in the same position today that I was when deciding the issue in *Stanley. Robinson* provides guidance as to how the Supreme Court of Appeals would rule, but it is not dispositive. I am also not bound by my own ruling in *Stanley,* though I am inclined to follow it unless convinced that I was incorrect then. This motion raises a question of statutory interpretation, and, for guidance in interpreting Section 55–7B–8, I have looked to courts in other jurisdictions with similar medical malpractice liability "caps." Case law from those courts is helpful but inconsistent.

### A. The Supreme Courts of Colorado and Texas interpreted similar statutes to limit individual liability, not total potential recovery.

Limiting medical malpractice liability is a legislative response to the rising cost of medical malpractice insurance. The parties here agree that the West Virginia legislature passed Section 55–7B–8 in an effort to make professional liability insurance affordable for health care providers. *See* Radiology Defendants' Response at 3; Plaintiffs' Reply Memorandum [Docket 116] at 8; *see also* West Virginia Code § 55–7B–1. The Colorado legislature passed a general damages statute for similar reasons, which the Supreme Court of Colorado considered in *General Electric Co. v. Niemet,* 866 P.2d 1361 (Colo.1994). The statute, which was not limited in its application to damages for medical malpractice, provided the following limitation on liability:

In any civil action in which damages for noneconomic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor. In no case shall the amount of such damages exceed five hundred thousand dollars.

*Id.* at 1363 (quoting Colo.Rev.Stat. § 13–21–102.5(3)(a) (1987)). The court found that the language of the statute is ambigu-

ous as to "whether the cap is meant to limit the plaintiff's total award or the liability of an individual defendant." *Id.* at 1364. Reviewing the legislative history of the statute, the court found that it must apply to the liability of each individual defendant in a suit. *See id.* at 1364–66. The statute was enacted "to improve the predictability of risks faced by insurance companies," and "[t]he concern of an insurance company is the risk associated with insuring each individual insured, not with denying an injured person damages that may be paid by another insurance company or person." *Id.* at 1365.

That analysis of the Colorado legislature's intent is persuasive, and applies to the instant case as well. By limiting the liability of individual health care providers for noneconomic damages, state legislatures help insurance companies predict risk. Insurance companies need not be concerned with denying awards from other insurance companies to the victims of medical malpractice.

The *Niemet* defendant argued that the phrase "the total of such damages" in the Colorado statute must apply to a plaintiff's total recovery. *Id.* at 1366. The defendant did not provide authority for that proposition, however, and could not persuade the court that the word "total" applied to the plaintiff rather than the defendant. *Id.* I find that Section 55–7B–8 is less ambiguous than the Colorado statute in this regard. While the Colorado legislature applied a cap to "any civil action in which damages for noneconomic loss or injury may be awarded," the West Virginia legislature more specifically applied a cap to "any medical professional liability action brought against a health care provider." On the question of whether the limitation applies to the defendant or the plaintiff, Section 55–7B–8 is more direct than the Colorado statute: the plaintiff's recovery is limited with regard to a single health care provider defendant.

Subsequent to *Niemet,* in *Colorado Permanente Medical Group, P.C. v. Evans,* 926 P.2d 1218 (Colo.1996), the Supreme Court of Colorado considered a statutory limitation that applied specifically to damages from medical malpractice:

The total amount recoverable for all damages for a course of care for all defendants in any civil action for damages in tort brought against a health care professional ..., shall not exceed one million dollars, present value per patient, including any derivative claim by any other claimant, of which not more than two hundred fifty thousand dollars, present value per patient, including any derivative claim by any other claimant, shall be attributable to noneconomic loss or injury ....

*Id.* at 1229 (quoting Col.Rev.Stat. § 13–64–302 (1996)). The *Evans* plaintiff, citing *Niemet,* argued that this statutory cap should be applied to each defendant, rather than to each plaintiff. *Id.* The court found, however, that the medical malpractice statute, unlike the general damages statute, was not ambiguous on its face. *Id.* The effect of the statute, including the phrase "total amount recoverable for a course of care for all defendants," was to limit the plaintiff to one recovery of $250,000. The *Evans* holding is persuasive, and demonstrates that when a state legislature intends to limit the liability of all defendants, it can easily do so.

When a state legislature fails to indicate that intention, courts should not read it into the statute. The Supreme Court of Texas considered the following statutory language in *Rose v. Doctors Hospital,* 801 S.W.2d 841 (Texas 1990): "In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000." 801 S.W.2d at 846 (quoting Tex.Rev.Civ. Stat.

Ann. art. 4590i, § 11.02(a) (Vernon 1991)). The court emphasized, as I did in *Stanley,* the statute's explicit reference to a single defendant:

> It is clear that the damages cap amounts should be calculated on a "per defendant" basis because the language of [the statute] clearly applies to the recovery against the individual defendant, not the award to the individual plaintiff. Plaintiffs who recover against more than one defendant may therefore obtain a judgment in excess of the cap, so long as the combined statutory liability of all defendants is not exceeded.

*Id.* at 847; *see also Wynn v. Cohan,* 864 S.W.2d 205, 206 (Tex.App.1993). I agree with this reading of the statute's plain language. The Texas legislature, like West Virginia's, would not have referred to "*a* physician or health care provider" if it meant to limit the liability of all health care provider defendants as a group.

The Colorado decisions, along with *Rose,* support my interpretation of Section 55–7B–8 in *Stanley* and persuade me to follow that interpretation here.

### B. The Supreme Court of Virginia interpreted a similar statute to limit total potential recovery.

The courts in some other jurisdictions have decided this issue differently. In *Etheridge v. Medical Center Hospitals,* 237 Va. 87, 376 S.E.2d 525 (1989), for example, the Supreme Court of Virginia considered a statute with language very similar to that of Section 55–7B–8: "In any verdict returned against a health care provider in an action for malpractice ... the total amount recoverable for any injury to, or death of, a patient shall not exceed seven hundred fifty thousand dollars." *Id.* at 528 (quoting Va.Code Ann. § 8.01–581.15). After finding the statute constitutional, the court addressed the plaintiff's contention that the statutory cap applied to each of the two defendants there, entitling the plaintiff to $1,500,000. *Id.* at 534. The court rejected the plaintiff's argument:

> The statute provides that '[i]n any verdict returned against a health care provider in an action for malpractice ... the *total amount recoverable for any injury to ... a patient* shall not exceed seven hundred fifty thousand dollars.' [The plaintiff's] claim was for an indivisible injury, caused by the concurring negligence of each defendant. Giving [the statute] its plain meaning, we hold that [the plaintiff's] damages are limited to a total of $750,000.

*Id.* at 535 (italics in original). The court's use of italics emphasizes that its holding rested on the Virginia legislature's intent to cap "the total amount recoverable for any injury."

In light of my discussion of *Stanley, Rose,* and *Niemet* above, I must respectfully disagree with the reasoning of the *Etheridge* court. The *Etheridge* holding emphasizes the portion of the statute italicized by the court without considering its proper context. By focusing solely on the words, "total amount recoverable," *Etheridge* renders meaningless the words "[i]n any verdict returned against a health care provider." The latter phrase, in my view, situates the limitation on recovery within a particular context: an action against single health care provider. In actions against multiple health care providers, each defendant is subject to a separate limitation.[3]

---

**3.** I note the same difference of opinion with the federal courts sitting in Virginia, influenced by *Etheridge,* that have found the plain meaning of the Virginia statute to limit a plaintiff's total recovery against multiple defendants. *See, e.g., Power v. Alexandria Physicians Group, Ltd.,* 887 F.Supp. 845, 848 (E.D.Va.1995); *Daniel v. Jones,* 39 F.Supp.2d 635, 638–39 (E.D.Va.1999).

**C. The state legislatures of Kansas and Missouri passed less ambiguous statutes.**

Other state legislatures have found ways to make their intent plainer. The Kansas legislature, for example, passed a statute similar to 55–7B–8, but with wording that clearly caps a plaintiff's total recovery in a medical malpractice action: "(a) As used in this section 'personal injury action' means any action seeking damages for personal injury or death. (b) In any personal injury action, the total amount recoverable by each party from all defendants for all claims for noneconomic loss shall not exceed a sum of $250,000." *See Hoover v. Innovative Health of Kansas, Inc.,* 26 Kan. App.2d 447, 988 P.2d 287, 290 (1999) (quoting Kan. Stat. Ann. § 60–19a02). In *Hoover,* the Court of Appeals of Kansas held that the plain language of the statute mandated that all of the plaintiff's claims, even though they could have been brought as separate actions, were to be aggregated under the single statutory cap of $250,000. The language of the Kansas statute applies to "all defendants."

Taking the opposite tack, the Missouri legislature passed a statute that unambiguously applies to individual defendants:

> In any action against a health care provider for damages for personal injury or death arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than three hundred fifty thousand dollars per occurrence for noneconomic damages *from any one defendant* as defendant is defined in subsection 2 of this section.

Mo.Rev.Stat. § 538.210 (2003) (emphasis added). By explicitly limiting the amount a plaintiff can recover from "any one defendant," the statute clearly indicates that a plaintiff can recover that amount from each defendant in an action. *See Vincent v. Johnson,* 833 S.W.2d 859, 864 (Mo.1992).

**3. The West Virginia Supreme Court of Appeals, interpreting Section 55–7B–8, would decide this issue in favor of the plaintiffs.**

I am confident that the West Virginia Supreme Court of Appeals would resolve the ambiguity in 55–7B–8 by giving meaning to the singular term "a health care provider," as did the Supreme Court of Texas. *Robinson,* the best indication I have of how the court would rule, supports that interpretation. Accordingly, I now **GRANT** in part the plaintiffs' motion for a pre-trial ruling and **FIND** that West Virginia Code § 55–7B–8, as enacted at the time of the alleged occurrences of medical malpractice here, limited an individual health care provider's liability for an occurrence of medical practice to $1,000,000. Section 55–7B–8 did not limit the total amount a plaintiff could recover from multiple health care providers.

**4. The Defendants' argument concerning West Virginia Code Section 55–7B–9 is unavailing.**

The radiologist defendants have also argued that Section 55–7B–8 must be read in connection with Section 55–7B–9, which provides for joint and several liability against every defendant that bears twenty-five percent or more of the negligence attributable to all defendants. Radiologist Defendants' Response at 9. According to the defendants, "the legislature would not have gone to the trouble of creating a cap while simultaneously providing a mechanism through which the cap can be regularly bypassed." *Id.* at 10. This argument is unavailing. Regardless of the joint and several liability of any defendant, the maximum amount recoverable against that defendant for an act of medical malpractice will be one million dollars. Section 55–7B–9 is therefore not a mechanism

for bypassing the cap provided for in Section 55–7B–8.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and **DIRECTS** the Clerk to post this published opinion at http://www.wvsd.uscourst.gov.